PEDRO VÉLEZ SEGUINOT, ETC., demandantes y recurridos, *v.* AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO, ETC., demandados y peticionarios; MUNICIPIO DE CAROLINA y ADMIRAL INS. CO., terceros demandados.

*Número:* CC-2003-85 *Resuelto:* 18 de mayo de 2005

---

774

*Carlos Martínez Texidor*, abogado de la parte peticionaria; *Carlos Iguina Oharris*, abogado de la parte recurrida.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

El 4 de mayo de 1999, Pedro Vélez Seguinot, su esposa Margarita Arrocho Maldonado y la sociedad legal de gananciales compuesta por ambos presentaron ante el Tribunal de Primera Instancia, Sala Superior de Carolina, una demanda de daños y perjuicios contra la Autoridad de Acueductos y Alcantarillados (A.A.A.), su aseguradora, American International Insurance Company of Puerto Rico (AIICo) y el Estado Libre Asociado de Puerto Rico (E.L.A.).

En la referida demanda se alegó, en síntesis, que el 24 de septiembre de 1996, mientras los codemandantes transitaban en horas de la mañana por la avenida Roberto Cle-

mente del municipio de Carolina, prudentemente y cumpliendo con las leyes de tránsito, *su automóvil cayó súbitamente en uno de los conductos de los registros de acueductos.* Se adujo que el referido conducto estaba roto, sin tapa y sin contorno de cemento; alegaron, además, que el accidente había sido provocado por la exclusiva negligencia de los codemandados debido a que no mantuvieron ni operaron la calle y el contorno adecuadamente, ni colocaron rótulo alguno que advirtiese al público sobre la peligrosidad del lugar.

Luego de varios trámites procesales, el E.L.A. presentó ante el tribunal de instancia una *moción de desestimación* en la cual expuso que, luego de realizar la investigación correspondiente del caso, el Departamento de Transportación y Obras Públicas le había informado que el lugar donde se alegaba que ocurrieron los hechos no estaba bajo la jurisdicción, el control y el mantenimiento del E.L.A. La parte demandante se allanó a dicha solicitud de desestimación. Conforme a lo anterior, *el foro primario emitió sentencia parcial mediante la cual desetimó la demanda contra el E.L.A.*

Posteriormente, la A.A.A. y AIICo presentaron ante el foro primario una *demanda contra tercero* contra el municipio de Carolina y su aseguradora, Admiral Insurance Company. Se alegó, en síntesis, que la avenida Roberto Clemente era propiedad y estaba bajo el control, dominio, jurisdicción y mantenimiento del municipio de Carolina. En virtud de lo anterior, se adujo que fue este municipio quien actuó negligentemente al no mantener la mencionada carretera en condiciones de razonable seguridad. Se alegó, además, que los terceros demandados eran los que debían responder directamente a la parte demandante o, en la alternativa, a la parte demandada en la eventualidad de que el Tribunal de Primera Instancia declarara "con lugar" la demanda contra ellos.

Habiendo sido pautada la vista en su fondo del caso para el 11 de diciembre, y previo a iniciarse la referida vista, los demandantes y el municipio de Carolina —parte tercera demandada— llegaron a un *acuerdo transaccional* que puso fin a la controversia entre dichas partes, el cual fue aprobado por el foro primario en corte abierta. *A los fines de plasmar por escrito la transacción efectuada, el 31 de enero de 2002 el tribunal de instancia emitió sentencia a esos efectos.* En ésta, el foro primario condenó al municipio a satisfacer la cantidad de veinticinco mil dólares como compensación total de todos los daños y perjuicios presentes y futuros sufridos por la parte demandante por motivo del accidente automovilístico al cual se refería la causa de acción.

Por otra parte, *el 11 de febrero de 2002* —luego de celebrado el juicio en su fondo— *el tribunal de instancia emitió sentencia, disponiendo finalmente del caso.* Aquí, declaró "con lugar" la demanda en contra de A.A.A. y su aseguradora AIICo y, en consecuencia, las condenó a pagar $57,500 al señor Vélez Seguinot y $96,500 a la señora Arrocho Maldonado por los daños sufridos por ellos como resultado del accidente en el que se vieron involucrados. Además, el foro primario le impuso a la parte demandada el pago de intereses a partir de la fecha de la presentación de la demanda, más el pago de costas, gastos y honorarios de abogado. *Ambas sentencias —esto es, la de 31 de enero y la de 11 de febrero de 2002— fueron notificadas el 14 de febrero de 2002.*

Resulta de *particular importancia enfatizar* el hecho de que no obstante la *segunda* sentencia *haber sido efectivamente emitida el 11 de febrero de 2002* —fecha que se hizo constar en la sentencia propiamente— en su *volante de notificación*, de 14 de febrero de 2002, la secretaria del foro de instancia *hizo constar, por error, que la sentencia era de 31 de enero de 2002*, fecha de la *primera* sentencia emitida.

Oportunamente, el 25 de febrero de 2002, la A.A.A. y AIICo presentaron ante el tribunal de instancia una moción en solicitud de determinaciones de hechos adicionales en conformidad con la Regla 43.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III.(¹) Esta moción fue declarada "no ha lugar" por el foro primario mediante resolución a esos efectos.

Posteriormente, el 1 de marzo de 2002 las mencionadas demandadas presentaron una moción de reconsideración ante el tribunal de instancia,(²) solicitud que fue denegada por el referido foro. Inconforme con tal determinación, el 4 de abril de 2002 la parte demandada acudió, vía recurso de apelación, ante el Tribunal de Apelaciones.(³) El 17 de abril de 2002 la *parte demandante* presentó ante el foro apelativo intermedio una *moción de desestimación*, en la cual expuso *que el recurso de apelación de la parte demandada no se le había notificado a la parte tercera demandada, quien era parte en el pleito.* En vista de ello, solicitó que se desestimara el recurso por no haber sido perfeccionado en tiempo. En virtud de la referida moción, el tribunal apelativo intermedio emitió una orden dirigida a la parte demandada para que mostrara causa por la cual no debía ser desestimado su recurso por falta de notificación a una de las partes en el pleito.

---

(¹) En la moción de determinaciones de hechos adicionales, la parte demandada indicó, entre otras cosas, que había quedado adversamente afectada por la sentencia emitida por el foro primario el *11 de febrero de 2002 y notificada a las partes el 14 de febrero de 2002.*

(²) Nuevamente, en su solicitud de reconsideración, la parte demandada hizo alusión a que la sentencia que declaró "con lugar" la demanda en el caso fue firmada *"el 11 de febrero de 2002 y archivada en autos copia de su notificación el 14 de febrero de ese mismo año".*

(³) En el Escrito de Apelación, la parte demandada, al hacer referencia a la sentencia cuya revisión solicitaba, indicó que *"dicha sentencia fue dictada el día 11 de febrero de 2002 y se notificó y archivó copia en los autos del caso el día 14 de febrero de 2002".* Posteriormente, señaló que *"se acompaña copia de la sentencia del 11 de febrero de 2002 y de su notificación".*

La parte demandada compareció ante el foro apelativo intermedio en cumplimiento de la mencionada orden.(⁴) El Tribunal de Apelaciones emitió una sentencia, *desestimando* el recurso; expresó que, según había indicado la parte demandante, carecía de jurisdicción para atender el recurso debido a que éste no había sido notificado a todas las partes en el pleito. Explicó que la sentencia dictada por el foro primario el 31 de enero de 2002, aprobando la estipulación transaccional, no se había convertido en final porque no cumplió con lo requerido en la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III. En virtud de lo anterior, concluyó que las partes terceras demandadas tenían que ser notificadas debido a que continuaron siendo partes en el pleito hasta su adjudicación definitiva.

Oportunamente, la parte demandada presentó ante el foro apelativo intermedio una moción de reconsideración. Denegada esta moción por el foro apelativo intermedio, y aún inconformes, las demandadas A.A.A. y AIICo recurrieron, vía *certiorari*,(⁵) ante este Tribunal. El 19 de julio de

---

(⁴) En el escrito que presentaran, las demandadas alegaron que el municipio de Carolina no era parte en el pleito debido a que la demanda contra terceros se había convertido en inoficiosa luego del acuerdo pactado entre la parte tercera demandada y los demandantes. Se adujo, además, que la alegación de que no se le notificó el escrito apelativo a la parte tercera demandada era inconsecuente y carente de fundamentos para la desestimación, debido a que no estaba en controversia ni el referido acuerdo transaccional ni la responsabilidad del municipio de Carolina.

(⁵) En dicho recurso, las demandadas expusieron que la sentencia que puso fin al pleito fue emitida *"el 11 de febrero de 2002 y notificada el 14 de febrero de 2002"*. Más adelante, haciendo referencia a la Sentencia de 31 de enero de 2002, indicó: "Esta sentencia fue notificada el 14 de febrero de 2002. *Ese mismo día, 14 de febrero de 2002 se notificó otra sentencia del Honorable Tribunal de Primera Instancia de Carolina, dictada el 11 de febrero de 2002 declarando con lugar la demanda* condenando a los peticionarios a pagar a la parte demandante ciertas cantidades de dinero como se ha dicho antes."

Posteriormente indica que "[e]s imprescindible señalar en este momento que *ambas sentencias fueron simultáneamente notificadas a las partes y que sus notificaciones fueron archivadas en los autos de este caso también el mismo día 14 de febrero de 2002"*. Luego, repite que *"copia de la notificación de las dos (2) sentencias fue archivada en autos el 14 de febrero de 2002"*.

Subsiguientemente, expone que, "es decir, dicha sentencia que antes era parcial, se convirtió en final cuando *fueron registradas y notificadas el 14 de febrero de 2002 ambas sentencias"*. Finalmente, esgrimen que "es importante volver a señalar que *la sentencia parcial dictada el 31 de enero de 2002 y la sentencia dictada el 11 de febrero de 2002 fueron notificadas y archivadas copias de su notificación el mismo día"*.

2002 este Tribunal emitió una resolución, *denegando* la antes mencionada solicitud de *certiorari*. Posteriormente, el 7 de agosto de 2002 —*y sin haberse remitido el mandato*—([6]) la parte demandada presentó ante este Tribunal un escrito titulado "Escrito informativo y solicitud de desistimiento del recurso sin perjuicio". En éste expuso que cuando estaba en proceso de hacer la solicitud de reconsideración a la determinación del recurso de *certiorari*, se percató de que no encontraba la notificación de la sentencia del 11 de febrero de 2002.([7]) Por lo anterior, indicó que en ese momento se había dado cuenta de que la referida sentencia no había sido notificada a las partes conforme a derecho y, por consiguiente, no había comenzado a decursar el término para recurrir.

Ese mismo día la parte demandada presentó un escrito ante el foro primario. Mediante el referido escrito solicitó que se notificara conforme a la ley la sentencia del 11 de febrero de 2002 y se archivara en autos copia de su notificación para que pudiera comenzar a decursar el término para acudir en revisión de la referida sentencia. Además, solicitó al foro primario que resolviera la demanda de terceros, ya que ninguna de las sentencias dictadas la resolvía y la parte demandada no la había retirado ni había renunciado a ésta.

El 13 de agosto de 2002, la parte demandante presentó ante el foro primario su oposición al antes mencionado escrito presentado por la parte demandada. Alegó que la Sentencia de 11 de febrero de 2002 había sido efectivamente notificada el 14 de febrero de 2002. Se expuso que la sentencia había sido enviada a todas las partes en la fecha correcta en que se archivó en autos su copia. *Indicó, ade-*

---

([6]) El mandato fue remitido el 9 de agosto de 2002.

([7]) Ello en vista del hecho que, conforme expresáramos anteriormente, en el volante de notificación de la sentencia emitida el 11 de febrero de 2002 se hizo constar, por error, la fecha de 31 de enero de 2002.

*más, que el error en la notificación al indicar que la sentencia había sido emitida el 31 de enero de 2002, en vez del 11 de febrero de 2002, fue un mero error oficinesco, que ocurrió por inadvertencia de la secretaría del tribunal*; error que no afectó el derecho de la parte demandada de acudir al foro apelativo intermedio, *como lo había así hecho.*

Así las cosas, el 26 de agosto de 2002, el tribunal de instancia emitió una *notificación enmendada* de la sentencia del 11 de febrero de 2002. El foro primario, en la referida notificación, "aclaró" que ésta era sólo a los fines de corregir la fecha en que fue emitida la sentencia.

Tres días más tarde, la parte demandada presentó ante este Tribunal un nuevo escrito titulado Solicitud de Desistimiento del Recurso de *Certiorari* por Académico. En éste, alegó que la solicitud de desistimiento presentada ante este Tribunal era académica, ya que el foro primario había emitido ya nuevamente la notificación de la sentencia de 11 de febrero de 2002 y, por tal razón, el término para recurrir había comenzado nuevamente a decursar, conforme a la Regla 46 de Procedimiento Civil, 32 L.P.R.A. Ap. III, el 26 de agosto de 2002.

A raíz de esta nueva notificación, el 5 de septiembre de 2002, A.A.A. y AIICo presentaron nuevamente una moción para solicitar determinaciones de hechos adicionales ante el foro primario, la cual fue declarada "no ha lugar". Posteriormente, el 10 de septiembre de 2002 la parte demandada también presentó una segunda moción de reconsideración ante el tribunal de instancia, la cual también fue declarada "no ha lugar".

El 10 de octubre de 2002, los demandados presentaron un nuevo recurso de apelación ante el Tribunal de Apelaciones. Además de alegarse los mismos planteamientos de error que en la primera apelación, se indicó que como la Sentencia de 11 de febrero de 2002 había sido ar-

chivada en autos conforme a derecho el 26 de agosto de 2002, a partir de esa fecha fue que comenzó a transcurrir el término para acudir en apelación.

El 27 de noviembre de 2002, luego de que la parte demandante presentara una moción de desestimación al nuevo recurso de apelación, el foro apelativo intermedio emitió su sentencia. Nuevamente, el Tribunal de Apelaciones desestimó el recurso por falta de jurisdicción. Concluyó el foro apelativo intermedio que la notificación del 26 de agosto de 2002 sólo constituyó una enmienda *nunc pro tunc* para enmendar un defecto de forma, a saber, la constancia de la verdadera fecha en que la sentencia fue emitida.

Insatisfecha, la parte demandada acudió, el 11 de febrero de 2003 —vía *certiorari*— ante este Tribunal, señalando que había incidido el Tribunal de Apelaciones

> ... al decretar que carecía de jurisdicción para entender en el recurso presentado por esta parte concluyendo erróneamente que la sentencia dictada por el Honorable Tribunal de Instancia, Sala Superior de Carolina el 11 de febrero de 2002 y no notificada y archivada en autos copia de su notificación el 26 de agosto de 2002.
>
> Como resultado de este error incurrió en error de forma suplementaria el Honorable Tribunal de Circuito de Apelaciones al determinar que el término de apelación jurisdiccional comienza a decursar a partir de la fecha en que se dicta la sentencia y no a partir de la fecha en que se archiva en autos copia de su notificación.
>
> ... al concluir erróneamente que la notificación de la sentencia del 11 de febrero de 2002 conforme a las disposiciones de ley aplicables y la cual fue archivada en autos copia de su notificación el día 26 de agosto de 2002 sólo corregía un error de forma que constituye una enmienda "Nunc Pro Tunc" y por consiguiente no tuvo el efecto de que comenzara a decursar el término apelativo jurisdiccional.
>
> ... al desestimar el recurso de apelación ya que la parte demandante-recurrida estaba impedida de solicitar desestimación porque esto constituía violación a la doctrina de la ley del caso.
>
> ... al desestimar el escrito de apelación por falta de jurisdicción y no devolver el caso al Honorable Tribunal de Instancia

para que adjudicara la demanda de terceros radicada por esta parte en contra de los terceros demandados, Municipio de Carolina y Admiral Insurance Company, lo que implica que no hay constancia de un archivo de notificación de una sentencia final en el caso que nos ocupa. Petición de *certiorari*, pág. 11.

*Expedimos* el recurso. Contando con la comparecencia de ambas partes, y estando en condición de resolverlo, procedemos a así hacerlo.

## I

Como es sabido, en "una sentencia se adjudican las controversias habidas en un pleito y se definen los derechos de las partes involucradas". *Falcón Padilla v. Maldonado Quirós*, 138 D.P.R. 983, 989 (1995); *Cárdenas Maxán v. Rodríguez*, 119 D.P.R. 642, 656 (1987). Una vez se dicta una sentencia, las Reglas de Procedimiento Civil rigen lo referente a las formalidades y los procedimientos que se deben cumplir para poder presentar un recurso de apelación. Específicamente a esos efectos, la Regla 53.1(c)[8] de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone:

El recurso de apelación deberá ser presentado en la forma antes dispuesta, dentro del término jurisdiccional de treinta (30) días contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado. En

---

[8] La Regla 13(A) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-A, también rige lo referente a la presentación de los recursos de apelación, al disponer que:

"Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, incluyendo el Tribunal de Distrito durante el proceso de su abolición, *se presentarán dentro del término jurisdiccional de treinta (30) días contados desde el archivo en autos de una copia de la notificación de la sentencia. En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios o una de sus instrumentalidades que no fuere una corporación pública, o en que los municipios de Puerto Rico sean parte en un pleito,* el recuso de apelación se formalizará, por cualquier parte en el pleito que haya sido perjudicada por la sentencia, presentando un escrito de apelación dentro del término jurisdiccional de sesenta (60) días, contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado." (Énfasis suplido.)

aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios o una de sus instrumentalidades que no fuere una corporación pública, o los municipios de Puerto Rico sean parte en un pleito, el recurso de apelación se formalizará, por cualquier parte en el pleito perjudicada por la sentencia, presentando un escrito de apelación en la forma antes dispuesta y dentro del término jurisdiccional de sesenta (60) días contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado.[9]

■ Según establece la antes citada regla, el término para acudir al foro apelativo intermedio es jurisdiccional. *Pellot v. Avon*, 160 D.P.R. 125 (2003). Véase, además, H. Sánchez Martínez, *Derecho Procesal Apelativo*, San Juan, Ed. LexisNexis, 2001, pág. 61. A tales efectos, este Tribunal ha indicado que el incumplimiento con el referido término es fatal debido a que es improrrogable. *Salinas v. S.L.G. Alonso*, 160 D.P.R. 647 (2003). Además, hemos señalado que este término, contrario a los de cumplimiento estricto, no admite ser extendido por justa causa. *Martínez, Inc. v. Abijoe Realty Corp.*, 151 D.P.R. 1, 7 (2000); *Arriaga v. F.S.E.*, 145 D.P.R. 122, 131 (1998). Es decir, este término transcurre inexorablemente y el tribunal no tiene jurisdicción para entender en un recurso presentado fuera de éste, no importa las consecuencias procesales que su expiración prorrogue. Véanse: Sánchez Martínez, *op. cit.*, pág. 60; R. Hernández Colón, *Derecho Procesal Civil*, San Juan, Ed. Michie, 1997, págs. 154–155.

■ Es debido al carácter fatal de este término que hemos indicado que es "imprescindible la pronta y correcta notificación" de las sentencias, ya que según dispone la Regla 53.1 de Procedimiento Civil, ante, *comienza a decursar a partir del archivo en autos de copia de la notificación. Martínez, Inc. v. Abijoe Realty Corp.*, ante.

---

[9] Los municipios y sus funcionarios no cualifican como instrumentalidades del Estado Libre Asociado y, por tal razón, les aplica el término de treinta días, y no el de sesenta, al recurso de apelación. *Bco. Bilbao v. Mun. de Vega Baja*, 154 D.P.R. 53 (2001); *Alcalde de San Juan v. Asamblea Municipal*, 132 D.P.R. 820 (1993).

■ Específicamente, las Reglas de Procedimiento Civil imponen este deber de notificar las sentencias cuanto antes a todas las partes en el pleito y archivar en autos copia de la constancia de la notificación al Secretario del Tribunal. Las Reglas 65.3([10]) y 67.2([11]) de Procedimiento Civil, 32 L.P.R.A. Ap. III, establecen la forma en que se llevará a cabo toda notificación. Este Tribunal ha señalado que cuando el Secretario del tribunal va a notificar a las partes a través del servicio de correos, se tiene que notificar a los abogados a la vez, y correctamente, a sus direcciones conocidas en autos. *Rodríguez Mora v. García Lloréns*, 147 D.P.R. 305, 310 (1998). Véase, además, J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. II, pág. 1146.

■ Por su parte, la Regla 46 de Procedimiento Civil, ante, establece específicamente cuáles son las obligaciones del Secretario del tribunal con respecto a las notificaciones. A esos efectos, la referida regla dispone, en lo aquí pertinente, que:

---

([10]) La Regla 65.3 dispone, en lo aquí pertinente, que:

"(a) Inmediatamente después de archivarse en autos copia de una orden o sentencia, el secretario notificará tal archivo a todas las partes que hubieren comparecido en el pleito en la forma preceptuada en la Regla 67. El depósito de la notificación en el correo será aviso suficiente a todos los fines para los cuales se requiera por estas reglas una notificación del archivo de una orden o sentencia.

. . . . . . . .

"(c) El secretario hará constar en la copia de la constancia de la notificación que una a los autos originales la fecha y forma en que se hizo la notificación y la persona o personas notificadas." 32 L.P.R.A. Ap. III.

([11]) La Regla 67.2 dispone:

"Siempre que una parte haya comparecido representada por abogado, la notificación se hará al abogado, a menos que el tribunal ordene que la notificación se haga a la parte misma. La notificación al abogado o a la parte se hará entregándole copia o remitiéndosela por correo a su última dirección conocida, o de ésta no conocerse, dejándola en poder del secretario del tribunal. Entregar una copia, conforme a esta regla, significa ponerla en manos del abogado o de la parte, o dejarla en su oficina en poder de su secretaria o de otra persona a cargo de la misma; o, si no hubiere alguien encargado de la oficina dejándola en algún sitio conspicuo de la misma, o si la oficina estuviere cerrada o la persona a ser notificada no tuviere oficina, dejándosela en su domicilio o residencia habitual en poder de alguna persona que no sea menor de 18 años que resida allí. La notificación por correo quedará perfeccionada al ser depositada en el correo." 32 L.P.R.A. Ap. III.

Será deber del secretario notificar a la brevedad posible dentro de las normas que fije el Tribunal Supremo, las sentencias que dicte el tribunal, *archivando en autos copia de la sentencia y de la constancia de la notificación y registrando la sentencia.* La anotación de una sentencia en el Registro de Pleitos y Procedimientos constituye el registro de la sentencia. *La sentencia no surtirá efecto hasta archivarse en autos copia de su notificación y el término para apelar empezará correr a partir de la fecha de dicho archivo.* (Énfasis suplido.)[12]

Surge de lo anterior que el Secretario tiene la obligación, entre otras cosas, de notificar la sentencia y archivar en autos copia de la constancia de la notificación. Con respecto a este último deber, hemos señalado que el archivo en autos de copia de la notificación[13] "constituye la constancia oficial de la notificación que la ley requiere" y, por su importancia, "no es ni puede ser un acto caprichoso del secretario". *Asociación Cooperativa v. Navarro*, 70 D.P.R. 929, 932 (1950).

En cuanto al deber de la notificación[14] hemos indicado que " 'no es un mero requisito impuesto por las Reglas de Procedimiento Civil' ". *Martínez, Inc. v. Abijoe Realty Corp.*, ante, pág. 8, citando a *Falcón Padilla v. Maldonado Quirós*, ante, pág. 989. En cambio, hemos señalado " 'la imperiosidad del mismo debido al efecto que tiene dicha notificación sobre los procedimientos posteriores a la sentencia' ". Íd.

---

[12] La Regla 46 de Procedimiento Civil, 32 L.P.R.A. Ap. III, fue enmendada recientemente por la Ley Núm. 40 de 10 de enero de 1999, a los efectos de indicar que si la fecha del archivo en autos de copia de la notificación era distinta a la fecha del depósito en el correo de dicha notificación, se entendería que el término para presentar el recurso comenzaría a contarse a partir de la fecha del depósito en el correo. *Román v. K-mart Corp.*, 151 D.P.R. 731 (2000); *Martínez, Inc. v. Abijoe Realty Corp.*, 151 D.P.R. 1 (2000).

[13] Este deber es un acto ministerial del Secretario del tribunal de hacer constar en el expediente original de un caso la fecha y el modo en que el dictamen judicial de que se trate ha sido notificado a las partes. H. Sánchez Martínez, *Derecho Procesal Apelativo*, San Juan, Ed. LexisNexis, 2001, pág. 76.

[14] Así, en la notificación de la sentencia se consignan tres hechos y tres fechas distintas. A saber, que se dictó la sentencia, que se registró y que se archivó una copia en los autos del caso y la de la notificación de estos hechos a las partes. Las tres fechas son: la de la sentencia, la del archivo de la copia en los autos del caso y la de la notificación de estos hechos a las partes. Sánchez Martínez, ante, pág. 79.

■ Refiriéndonos específicamente a la importancia de una notificación correcta, hemos sido enfáticos en que "es característica imprescindible del debido proceso de ley". *Rodríguez Mora v. García Lloréns*, ante, pág. 309. Véanse, además: *Medio Mundo, Inc. v. Rivera*, 154 D.P.R. 315 (2001); Cuevas Segarra, ante, pág. 762. Además, hemos señalado que es "parte integral de la actuación judicial" y " 'requisito *sine qua non* de un ordenado sistema judicial' ". *Caro v. Cardona*, 158 D.P.R. 592 (2003). Véase, además, Cuevas Segarra, ante, pág. 1138.

■ En reiteradas ocasiones hemos expresado que el *propósito que sirve la notificación es proteger "el derecho de procurar la revisión judicial de la parte afectada por un dictamen a quo adverso".* (Énfasis suplido.) *Hosp. Dr. Domínguez v. Ryder*, 161 D.P.R. 341, 345 (2004). Véase *Martínez, Inc. v. Abijoe Realty Corp.*, ante. Este propósito queda reiterado por el hecho de que "si no se cumple con el trámite de notificación de las sentencias, éstas no surtirán efecto alguno ni podrán ser ejecutadas". *Falcón Padilla v. Maldonado Quirós*, ante, pág. 990. Véanse: *Pueblo v. Hernández Maldonado*, 129 D.P.R. 472 (1991); Cuevas Segarra, ante, pág. 762.

■ En ocasión de interpretar las consecuencias que puede tener un *error oficinesco cometido por el personal del tribunal en la notificación*, señalamos en *Rodríguez Mora v. García Lloréns*, ante, que *éstos no pueden afectar adversamente derechos de las partes*. Véase: Sánchez Martínez, ante, pág. 90.

Específicamente en *Rodríguez Mora v. García Lloréns*, ante, indicamos que el error de notificar una sentencia a la dirección errónea del abogado de una parte habiéndose suministrado la dirección correcta, equivalía a que no se hubiese emitido notificación alguna de la sentencia. En este caso señalamos que *este error oficinesco que requería la emisión de una ulterior notificación enmendada de sentencia, no podía generar la anomalía de crear dos términos*

*apelativos jurisdiccionales, con las consabidas ventajas y desventajas que eso conllevaba.* Íd. A tales efectos, el punto de partida para comenzar a contar el plazo de la apelación era la segunda notificación.

*Sin embargo*, hemos indicado que existen errores en la notificación que *no* tienen el efecto de interrumpir el término dispuesto para instar los remedios postsentencia. Así, por ejemplo, en *Barletta v. Tribunal Superior*, 100 D.P.R. 690, 693 (1972), este Tribunal determinó que aunque "constituye la mejor práctica el que los secretarios de las distintas salas del tribunal de primera instancia incluyan con cada notificación, copia de la sentencia, orden, resolución u otra actuación del tribunal que deba ser notificada a alguna parte", *el no enviarla no afecta el cómputo del plazo apelativo.*

Por otra parte, la Regla 49.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, rige lo referente a la autoridad[15] que tienen los tribunales de corregir los errores de forma.[16] La antes citada Regla 49.1 de Procedimiento Civil[17] dispone, en lo pertinente, que:

---

[15] Este Tribunal ha reconocido que dicha facultad no emana sólo de la Regla 49.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, sino que, también, es un poder inherente que tienen todos los tribunales. *León García v. Rest. El Tropical*, 154 D.P.R. 249 (2001); *Security Ins. Co. v. Tribunal Superior*, 101 D.P.R. 191, 203 (1973). Otro error que también conlleva la nulidad de la notificación es cuando se notifica a un abogado y no a todos, como sucede cuando se notifica a un abogado que representó a la parte pero que ya no la representa por haber renunciado antes a su representación legal y habérsele aceptado la renuncia. Ante estas circunstancias, la notificación también se considera ineficaz, a no ser que también el nuevo abogado haya sido notificado o que la parte misma haya sido notificada si es que el término para anunciar nueva representación expiró sin que la parte hubiese cumplido. Sánchez Martínez, ante, págs. 91–92.

[16] Este Tribunal ha actuado con liberalidad en la aplicación de esta doctrina de la subsanación o corrección de errores ocurridos por inadvertencia u omisión. *Security Ins. Co. v. Tribunal Superior*, ante; J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. II, pág. 781.

[17] Esta disposición estatutaria tiene su equivalente en la Regla 60(a) de Procedimiento Civil federal, 28 U.S.C. Véanse: *León García v. Rest. El Tropical*, ante; Cuevas Segarra, ante, pág. 781.

Los errores de forma[18] en las sentencias, órdenes u otras partes del expediente y los que aparezcan en las mismas por inadvertencia u omisión, podrán corregirse por el tribunal en cualquier tiempo, a su propia iniciativa, o a moción de cualquier parte, previa notificación, si ésta se ordenare. Durante la tramitación de una apelación o un recurso de *certiorari*, podrán corregirse dichos errores antes de elevar el expediente al tribunal de apelación y, posteriormente, sólo podrán corregirse con permiso[19] del tribunal de apelación.

 Surge de esta disposición estatutaria que los *tribunales pueden corregir en cualquier momento todo error de forma*[20] *que surja no sólo en una sentencia, sino, además, aquellos que surjan en órdenes u otras partes del expediente*. En ocasión de explicar cuáles son los errores de forma, este Tribunal ha señalado que estos errores[21] ocurren "por inadvertencia u omisión, o errores mecanográficos, *o que no puedan considerarse que van a la sustancia de la sentencia, orden o resolución, ni que se relacionan con asuntos discrecionales*". (Énfasis suplido y en el original.) *S.L.G. Coriano-Correa v. K-mart Corp.*, 154 D.P.R. 523, 529 (2001). Véase, además, Sánchez Martínez, ante, pág. 129.

 Asimismo, hemos establecido que no procede co-

[18] En el sistema federal, a este tipo de error, bajo la regla de Procedimiento Civil equivalente, se le conoce como "clerical mistake". *S.L.G. Coriano-Correa v. K-mart Corp.*, 154 D.P.R. 523 (2001). Véase 11 *Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d* Sec. 2854, pág. 239 (1995).

[19] Hemos señalado que este permiso que requiere la regla para poder corregir una enmienda de forma una vez se eleva el expediente del caso sólo aplica cuando este Tribunal resuelve entrar en los méritos del caso y expide el auto. *Insurance Co. of P.R. v. Tribunal Superior*, 100 D.P.R. 405, 412 (1972).

[20] Un error de forma es un error en cuanto a lo que se expresa en el documento de que se trata. Sin embargo, el referido error no necesariamente tiene que aparecer reflejado en el documento. R. Hernández Colon, *Derecho Procesal Civil*, San Juan, Ed. Michie, 1997, pág. 312.

[21] Entre los errores de forma más comunes se encuentran los errores mecanográficos, los errores de cómputos matemáticos en que no esté involucrada la discreción del tribunal sentenciador, los errores en nombres de personas o lugares, los errores de fechas y los errores de números o cifras. Sánchez Martínez, *op. cit.*, pág. 129. Véanse, además: Hernández Colón, ante, pág. 313; Cuevas Segarra, ante, pág. 781.

rregir un error al amparo de esta disposición estatutaria cuando éste constituye un error de derecho o cuando existe una controversia que trate sobre una interpretación de ley.[22] *S.L.G. Coriano-Correa v. K-mart Corp.*, ante.

En *S.L.G. Coriano-Correa v. K-mart Corp.*, ante, este Tribunal ejemplificó una serie de errores que pueden ser corregidos bajo la Regla 49.1 de Procedimiento Civil, ante. *A esos efectos, señalamos que se pueden enmendar en cualquier momento "errores de forma que aparezcan de los expedientes del tribunal", y "errores del secretario del tribunal*[23] *al anotar la sentencia".* (Énfasis suplido.) *S.L.G. Coriano-Correa v. K-mart Corp.*, ante, pág. 530. Además, indicamos que se puede utilizar la Regla 49.1 "para adicionar al reconocimiento del derecho de propiedad la condena de entregar los frutos, para dar una descripción completa en la sentencia de la propiedad disputada, y para conceder costas en la sentencia cuando éstas se reconocen en la opinión". (Citas omitidas.) Íd. Por último, señalamos que "si el derecho a cierto remedio está claramente sostenido por el récord, la omisión en concederlo es subsanable", también, mediante este tipo de enmienda. Íd.

Este Tribunal ha reiterado que las enmiendas encaminadas a corregir este tipo de error son de naturaleza *nunc pro tunc*, es decir, que se retrotraen a la fecha de la sentencia o resolución original. *S.L.G. Coriano-Correa v. K-mart Corp.*, ante, pág. 530. Véanse, además: Sánchez Martínez, ante, pág. 129; Hernández Colón, ante, pág. 312; Cuevas Segarra, ante, pág. 781.

En el presente caso, como hemos visto, la sentencia emitida contenía la fecha correcta de su emisión, esto es, el 11

---

[22] Este Tribunal ha establecido que aunque se pueden corregir cálculos matemáticos al amparo de la Regla 49.1, ante, esta última no se puede utilizar para corregir un cálculo cuando la controversia trate sobre una cuestión de interpretación de ley. *S.L.G. Coriano-Correa v. K-mart Corp.*, ante.

[23] Vale la pena señalar que la Regla 49.1 de Procedimiento Civil, ante, permite que se corrijan errores de forma cometidos no sólo por el tribunal sino, también, aquellos cometidos por su secretaría. Véase *Wright, Miller and Kane*, ante, pág. 239.

de febrero de 2002. Por un error del Secretario del tribunal de instancia, se hizo constar en el volante de notificación de la sentencia que ésta había sido emitida el 31 de enero de 2002. No hay duda de que se trata de un *mero error oficinesco* en la referida notificación, ocurrido por inadvertencia, *que no afectó la sustancia de la sentencia emitida ni los derechos de las partes, en específico, de los demandados.* La *mejor evidencia* de ello constituye el hecho de que éstos acudieron, en tiempo, ante el Tribunal de Apelaciones en revisión de la sentencia emitida el 11 de febrero de 2002, recurso que fue desestimado por la sencilla razón de que los demandados no notificaron a todas las partes en el pleito con copia del recurso. Por otro lado, *no* podemos ignorar las expresiones que en varias ocasiones hicieron los demandados en el referido recurso a los efectos de que la sentencia había sido emitida el 11 de febrero de 2002 y notificada el 14 de febrero de ese mismo año.

## II

Con ello en mente, atendemos los señalamientos de error de los demandados en el presente recurso. En sus primeros dos señalamientos, los codemandados peticionarios indican que el Tribunal de Apelaciones erró al decretar que carecía de jurisdicción para atender su recurso de apelación; ello por entender que el término para recurrir ante el foro apelativo intermedio no comenzó a decursar hasta que se notificó efectivamente la Sentencia de 11 de febrero de 2002, a través de la notificación enmendada de 26 de agosto de 2002.

Argumentan las peticionarias que la Sentencia de 11 de febrero de 2002 nunca fue notificada a través de la primera notificación de 14 de febrero de 2002. En virtud de lo anterior, alegan que no podía ser enmendada *nunc pro tunc* una notificación inexistente ni tampoco podía concluirse que tal omisión por parte de la Secretaría del tribunal era

794

un mero error oficinesco. *No les asiste la razón; veamos por qué.*

En el presente caso *no* existe controversia en cuanto a que se *emitieron dos sentencias diferentes* —una el 31 de enero de 2002 y la otra el 11 de febrero de 2002— *las cuales fueron enviadas simultáneamente a todos los abogados de las partes en el pleito a través de dos sobres separados.* Tampoco existe controversia con respecto a que *todos los abogados de las partes recibieron los referidos sobres, conteniendo cada uno de ellos copia de las respectivas sentencias con una copia de una notificación.*[24]

Sólo existe controversia con respecto a si la copia de la notificación que se adjuntó con la Sentencia de 11 de febrero de 2002 constituyó una notificación adecuada de la referida sentencia, o si ésta constituyó una notificación defectuosa debido a que contenía un error al indicar la fecha en que había sido emitida la sentencia.

Como expresamos anteriormente, la notificación sirve un propósito lógico y sabio, a saber, "brinda a las partes *la oportunidad de advenir en conocimiento real de la determinación tomada a la vez que otorga a las personas cuyos derechos pudieran verse transigidos una mayor oportunidad de determinar si ejercen o no los remedios que le han sido concedidos por ley*". (Énfasis suplido.) *Asoc. Vec. Altamesa Este v. Mun. San Juan*, 140 D.P.R. 24, 34 (1996).

*Luego de un estudio exhaustivo y minucioso del expe-*

---

[24] En lo pertinente al asunto ante nuestra consideración, ambas notificaciones leían como sigue:

"El secretario que suscribe notifica a usted que este tribunal ha emitido sentencia en el caso de epígrafe con fecha 31 de enero de 2002, que ha sido debidamente registrada y archivada en los autos de este caso, donde podrá usted enterarse detalladamente de los términos de la misma.

"Y, siendo o representando usted la parte perjudicada por la sentencia, de la cual puede establecerse recurso de apelación, dirijo a usted esta notificación, habiendo archivado en los autos de este caso copia de ella con fecha de 14 de febrero de 2002." *Exhibit*, IX, pág. 213.

Vale la pena destacar el hecho de que *las iniciales o firma de la secretaria auxiliar, Liz A. Villegas, que aparece en estas notificaciones, era distinta en ambos documentos.*

*diente del caso encontramos, repetimos, múltiples instancias en las cuales los propios peticionarios validaron el hecho de que fueron efectivamente notificados de la sentencia del 11 de febrero de 2002, notificada el 14 de febrero de 2002.*(²⁵) Peor aún, no es hasta que transcurrieron aproximadamente seis meses de la notificación del 14 de febrero de 2002 y hasta que este Tribunal declaró "no ha lugar" su recurso de *certiorari*, que las peticionarias supuestamente se percatan del referido error.

En vista de lo anterior, es forzoso concluir que la notificación fue correcta al cumplir con el referido propósito y que la parte demandada fue debidamente notificada aunque el volante contenía un error. Ello, repetimos, quedó evidenciado por el hecho de que los peticionarios presentaron su recurso de apelación dentro del término que dispone la Regla 53.1 de Procedimiento Civil, ante.

Resolvemos que las peticionarias fueron debidamente notificadas a través de la notificación del 14 de febrero de 2002 y, por consiguiente, la notificación del 26 de agosto de 2002 fue meramente una enmienda formal para hacer constar correctamente en el expediente del foro primario la fecha en que había sido firmada la sentencia; esto es, se trata de un mero error oficinesco que podría ser enmendado *nunc pro tunc.*

Si bien es cierto que en *Rodríguez Mora v. García Lloréns*, ante, señalamos que errores oficinescos no pueden afectar adversamente a las partes, en ese caso lo hicimos ante la *situación de hechos particular de aquel pleito* en el cual no se notificó a la dirección correcta de uno de los abogados de las partes, aunque ésta constaba en autos. En aquel caso indicamos que la referida notificación fue

___

(²⁵) Sirve también para sustentar el hecho de que la sentencia fue notificada efectivamente el 14 de febrero de 2002, el hecho de que la copia de la propia sentencia del 11 de febrero de 2002 contiene un ponche al final que indicaba 14 de febrero de 2002. Este ponche está localizado debajo de la firma de la juez Sonsire Ramos Soler, y aparece junto al ponche del nombre de la Secretaria Auxiliar del Tribunal, Liz A. Villegas, y su firma o iniciales.

inexistente y que por tal razón no podía ser subsanada posteriormente con una notificación enmendada de sentencia.

Es correcto que en ese caso indicamos que una notificación enmendada de sentencia no podía generar la anomalía de crear dos términos apelativos jurisdiccionales, con las consabidas ventajas y desventajas que eso conllevaba. Sin embargo, esto también lo expresamos en el contexto específico de aquel pleito en el cual, si se permitía la referida enmienda, iban a haber dos términos, a saber, uno para la parte que recibió la primera notificación y otro para la parte a cuyo abogado no se notificó a su dirección correcta, y por tal razón, tuvo que ser notificado mediante la segunda notificación.

*Distinta es la situación en el presente caso.* En este caso se notificó efectivamente a todos los abogados de las partes simultáneamente en el correo, por lo que la notificación enmendada no creó la anomalía de establecer dos términos jurisdiccionales diferentes para ambas partes. Además, en este caso *no* se afectó en forma alguna el derecho de las partes de acudir al foro apelativo.

En virtud de lo anterior, la notificación enmendada emitida por el foro primario fue hecha con el propósito de corregir un defecto de forma que constaba en el expediente del caso cometido por el Secretario del tribunal, lo que está permitido no sólo por la Regla 49.1 antes esbozada, sino, además, como poder inherente que tiene todo tribunal.

A base de lo antes expuesto, concluimos que no existe argumento jurídico alguno que nos persuada a reconocer que la notificación de 14 de febrero de 2002 de la sentencia del 11 de febrero fue nula. Ciertamente cometió un error la Secretaría del Tribunal de Primera Instancia al enviar una notificación con la fecha incorrecta en la cual la sentencia había sido emitida, pero ese error no afectó los derechos de las partes ni hizo que la notificación fuera defectuosa de-

bido a que no había informado efectivamente a las partes del comienzo del término para poder acudir en revisión de ésta.

En vista de lo anterior, resolvemos que no erró el Tribunal de Apelaciones al decretar que carecía de jurisdicción debido a que no se había presentado el recurso de apelación dentro del término dispuesto en ley para ello. Habiendo determinado que el foro apelativo intermedio carecía de jurisdicción para atender el recurso, resulta innecesario discutir los restantes señalamientos de error.

## III

Por los fundamentos que anteceden, *procede la confirmación de la sentencia emitida por el Tribunal de Apelaciones que desestimó el recurso de apelación presentado ante dicho foro judicial por las peticionarias A.A.A. y AIICo.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rivera Pérez no intervino.