Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MUNICIPIO DE JUNCOS representado por su Honorable Alcalde, Alfredo Alejandro Carrión<br><br>Recurrida<br><br>v.<br><br>MANUEL BEZARES PEÑA, UNIVERSAL PROPERTIES REALTY GOVERNMENT SERVICES LLC, CRIM, ESTADO LIBRE ASOCIADO DE PUERTO RICO, JOHN DOE Y RICHARD ROE<br><br>Peticionarios | KLAN202200950 | Apelación acogida como *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: JU2021CV00240<br><br>Sobre: Expropiación Forzosa |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Rivera Marchand y la Juez Martínez Cordero[1]

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de abril de 2024.

Comparece el Centro de Recaudación de Ingresos Municipales (en adelante, peticionario o CRIM) para solicitarnos la revisión de dos (2) dictámenes emitidos por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, TPI).

Mediante el *primer* dictamen objeto de revisión, el foro primario emitió y notificó una *Resolución* el 17 de mayo de 2022,[2] en la cual se determinó que el CRIM no tenía legitimación activa y que el Municipio de Juncos (en adelante, Municipio) estaba facultado para deducir de la suma de dinero estimada como justa compensación, el importe de las deudas de contribución y de los gravámenes, gastos de limpieza y mantenimiento o cualquier otro

---

[1] Véase, Orden Administrativa OATA-2023-001 del 9 de enero de 2023, en la que se asignó el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución de la Hon. Gloria L. Lebrón Nieves. Posteriormente, el 15 de marzo de 2024, se le asignó a la Hon. Juez Ivelisse Domínguez Irizarry.
[2] Apéndice del peticionario, a las págs. 85-87.

gasto necesario y conveniente a los fines de eliminar la condición de estorbo público correspondientes a la propiedad, al momento de radicar la acción judicial y que, por existir una deficiencia, no tenía que consignar suma alguna.

Mediante el *segundo* dictamen objeto de revisión, el tribunal apelado emitió y notificó una *Sentencia* el 28 de octubre de 2022,[3] en la cual declaró Ha Lugar la *Petición* de expropiación forzosa instada por el Municipio. En esta, se dispuso que el título en pleno dominio sobre la propiedad expropiada con todas sus mejoras, edificaciones y pertenencias inherentes, según descrito en el Exhibit A de los autos ante el TPI, quedaba investido a favor del Municipio. Decretó que la justa compensación a pagarse por la propiedad era $25,245.00. Sin embargo, dictaminó que por exceder la cantidad de la deuda por contribución y por gastos de limpieza, mantenimiento, gastos necesarios y convenientes a los fines de eliminar la condición de estorbo público, al valor de la tasación, existía una deficiencia de $79,108.97 a favor del Municipio, por lo que no se le requería el depósito de suma alguna ante el Tribunal como justa compensación por la propiedad. Además, se ordenó la eliminación de John Doe y Richard Roe por carecer de interés en el procedimiento instado.

Por los fundamentos que expondremos a continuación, se desestima el recurso de apelación solicitado. Por otro lado, se expide el auto de *certiorari* y se revoca la *Resolución* recurrida.

**I**

El 2 de septiembre de 2021, el Municipio presentó una *Petición* sobre expropiación forzosa[4]. Mediante esta, justificó la necesidad de adquirir la propiedad objeto de dicha acción ya que la misma consistía en una necesidad y utilidad pública conforme al procedimiento establecido por la Ordenanza Municipal Número 4,

---

[3] *Id.,* a las págs. 146-148.
[4] *Id.,* a las págs. 1-6.

Serie Núm. 2019-2020 y la Ordenanza Municipal Número 26, Serie Núm. 2020-2021, pues el aludido inmueble había sido declarado estorbo público. El Municipio estimó que la compensación justa y razonable que se debía pagar por la propiedad era veinticinco mil doscientos cuarenta y cinco dólares ($25,245.00), pero sostuvo que, conforme a la Sección 5(a) de la Ley General de Expropiación Forzosa, Ley de 12 de marzo de 1903, 32 LPRA sec. 2902, existía una deuda por contribuciones, gastos de limpieza, mantenimiento y otras expensas necesarias para eliminar la condición de estorbo público, las cuales totalizaban $79,108.97. Ante esto, el Municipio razonó que no se requería depositar ninguna suma de dinero al TPI en concepto de justa compensación y, en consecuencia, solicitó, entre otras cosas, el quedar investido con el título de pleno dominio sobre la propiedad en cuestión.

Por su parte, el 12 de noviembre de 2021, el peticionario presentó un documento intitulado *Comparecencia Especial para Notificar Contribuciones Adeudadas*[5]. En esencia, argumentó que la propiedad que el Municipio pretendía expropiar tenía una deuda contributiva de $82,613.29 y que el CRIM tenía una acreencia sobre dicha cantidad. A tales efectos, solicitó al TPI que se emitiera un cheque a favor del CRIM por la cantidad previamente mencionada, para cubrir toda la deuda contributiva de la referida propiedad.

Subsiguientemente, el 16 de febrero de 2022, el TPI emitió una *Orden* en la cual declaró Ha Lugar una moción del Municipio en la que solicitaba el emplazamiento y notificación por medio de edictos de las partes con interés Manuel Bezares Peña, John Doe y Richard Roe[6]. Consecuentemente, el TPI ordenó que estas personas fuesen emplazadas y notificadas conforme a la Regla 58.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 58.4. Cabe aclarar que surge del expediente

---

[5] Apéndice del peticionario, a las págs. 19-22.
[6] Véase, Sistema Unificado de Manejo y Administración de Casos (SUMAC), a la entrada 23.

que estos emplazamientos se expidieron y se publicaron en un periódico de circulación general el 29 de marzo de 2022 y los días 5 y 12 de abril de 2022[7].

Por su parte, el 19 de enero de 2022, el Municipio presentó una *Moción en Cumplimiento de Orden y Oposición a Solicitud del CRIM Hecha en Comparecencia Especial para Notificar Contribuciones Adeudadas (SUMAC doc. 12)*[8]. Mediante este escrito, argumentó que conforme a nuestro ordenamiento jurídico, la suma a consignar como estimado de justa compensación sería el valor de tasación menos las deudas por los gravámenes o cualquier otro gasto necesario a los fines de eliminar la condición de estorbo público correspondientes a la propiedad, incluyendo las deudas por contribución, por lo que, de existir una deficiencia, el Municipio no tenía que consignar suma alguna.

El 1 de febrero de 2022, el CRIM presentó una *Réplica a Oposición a Moción Notificando Contribuciones Adeudadas*[9]. Solicitó, entre otras cosas, que se declarara Ha Lugar su escrito de comparecencia especial en la cual notificó las contribuciones adeudadas por el inmueble en controversia, y a su vez, solicitó que se ordenara la consignación ante el TPI y el pago de las contribuciones allí reclamadas. Evaluado los escritos, el 17 de mayo de 2022, el TPI dictó y notificó una *Resolución[10]* y en esta declaró No Ha Lugar la *Comparecencia Especial para Notificar Contribuciones Adeudadas* presentada por el CRIM el 12 de noviembre de 2021 junto a los siguientes pronunciamientos:

1. El CRIM no tiene legitimación activa o "standing" por no verse afectada su acreencia por los descuentos realizados por el Municipio.
2. El municipio está facultado para deducir de la suma de dinero estimada como justa compensación, el importe de las deudas de contribución y de los gravámenes,

---

[7] Véase, SUMAC, a la entrada 30, el documento intitulado *Moción Acompañando Documento* presentado por el Municipio y su anejo.
[8] Apéndice del peticionario, a las págs. 26-52.
[9] *Id.,* a las págs. 53-84.
[10] *Id.,* a las págs. 86-87.

gastos de limpieza y mantenimiento y/o cualquier otro gasto necesario y conveniente a los fines de eliminar la condición de estorbo público correspondientes a la propiedad, al momento de radicar la acción judicial, y por existir una deficiencia éste no tiene que consignar suma alguna. *Véase, Sección 5a(5) de la Ley General de Expropiación Forzosa, Ley de 12 de marzo de 1903 (32 L.P.R.A. sec. 2907 y Exposición de Motivos de la Ley Núm. 175-2018*[11].

Inconforme con este resultado, el 1 de junio de 2022, el peticionario presentó una *Moción de Reconsideración o de Relevo de Resolución* e insistió en su planteamiento de que le correspondía cobrar su acreencia[12]. Por otro lado, el 21 de junio de 2022, el Municipio presentó una *Moción en Oposición a Solicitud de Reconsideración y Acompañando Documentos* en la cual esgrimió, entre otros argumentos, que el CRIM no tenía legitimación activa para hacer las impugnaciones que pretendía hacer en el caso de autos[13].

Así las cosas, el 28 de octubre de 2022, el TPI emitió y notificó su *Sentencia*[14]. En el dictamen, el foro primario expresó que, el 1 de junio de 2022, se celebró una vista y que las partes con interés no comparecieron a pesar de haber sido emplazadas mediante edicto. Así pues, el foro *a quo* declaró Ha Lugar la expropiación y realizó las siguientes manifestaciones:

> Se declara que el título en pleno dominio sobre la propiedad expropiada con todas sus mejoras, edificaciones y pertenencias inherentes, según se describe en el Exhibit A que consta en autos, queda investido a favor del Municipio de Juncos.
>
> Se decreta que la justa compensación a pagarse por la propiedad expropiada lo constituye la suma de la suma de VEINTICINCO MIL DOSCIENTOS CUARENTA Y CINCO DÓLARES ($25,245.00). Sin embargo, conforme a la Sección 5(a) de la Ley General de Expropiación Forzosa, Ley de 12 de marzo de 1903 (32 L.P.R.A. sec. 2907), por exceder la cantidad de la deuda por contribución y por gastos de limpieza y mantenimiento y gastos necesarios y convenientes a los fines de eliminar la condición de

---

[11] *Id.,* a la pág. 87.
[12] *Id.,* a las págs. 88-96.
[13] *Id.,* a las págs. 124-128.
[14] *Id.,* a las págs. 146-148.

estorbo público, al valor de tasación, existe una deficiencia de una suma de SETENTA Y NUEVE MIL CIENTO OCHO DÓLARES CON NOVENTA Y SIETE CENTAVOS ($79,108.97) a favor del Peticionario por lo que no se requiere el depósito de suma alguna en el Tribunal como justa compensación por la propiedad.

Se ordena la eliminación de John Doe y Richard Roe por carecer de interés en estos procedimientos[15].

Surge de la notificación de la sentencia, que la misma se notificó a la representación legal del CRIM y del Municipio. Ese mismo día, el 28 de octubre de 2022, el TPI emitió una *Orden* en la cual esbozó lo siguiente: "[e]valuados los escritos de ambas partes, se declara no ha lugar la solicitud de reconsideración presentada por el CRIM"[16].

Inconforme con lo dispuesto por el foro primario, el 28 de noviembre de 2022, compareció ante nos el CRIM mediante un recurso de *Apelación y/o Certiorari*, en el cual esgrimió la comisión de tres (3) errores cometidos por el TPI, a saber:

Erró el Tribunal de Primera Instancia al interpretar que el Municipio tiene facultad concedida por la Sección 5A de la Ley General de Expropiación Forzosa y por el Código Municipal de 2020, Artículo 4.010(d), para descontar de la suma de tasación determinada todas las deudas, intereses, recargos y penalidades, que correspondan a contribuciones sobre la propiedad inmueble previo a iniciar en el Tribunal la petición de expropiación sin determinación de justa compensación por el TPI.

Erró el Tribunal de Primera Instancia al no decretar la inconstitucionalidad de dicho acto ya que el mismo constituye uno que es contrario a la separación de poderes de nuestra Constitución y cuando resulta contrario con las disposiciones relacionadas con las facultades del CRIM, al fideicomiso establecido, la distribución estatuida del recaudo y la prelación de redención de deudas estatales y municipales establecida en la Ley 107- 2020.

Erró el Tribunal de Primera Instancia al entender que el legislador, por excepción, privó al CRIM de la facultad para cobrar, recibir, administrar y distribuir tales deudas por contribuciones sobre la propiedad en casos

---

[15] *Id.,* a la pág. 148.
[16] *Id.,* a la pág. 144.

de expropiaciones de estorbos públicos, aun cuando ello resulta en un menoscabo de las obligaciones del CRIM contraídas bajo el Plan Fiscal ante la Junta de Control Fiscal bajo Ley PROMESA, prohibido por el Art. II, Sec. 7, Const. PR, LPRA, Tomo 1.

Puntualizamos que de los autos pudimos constatar que, al menos a la fecha en que se presentó el escrito de *Apelación*, el foro primario no había emitido una notificación de sentencia por edicto para las partes con interés que, según adelantamos, no comparecieron al pleito, menos aún, su publicación[17]. Asimismo, el 7 de marzo de 2023, emitimos una *Resolución* en la cual dispusimos de varias controversias las cuales no son necesarias pormenorizar. Oportunamente, el 23 de marzo de 2023, compareció el Municipio con su *Alegato en Oposición de la Parte Apelada*. Con el beneficio de la comparecencia de las partes, procederemos a resolver la controversia que está ante nuestra consideración.

## II

### A

La Regla 52.2(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 52.2(a), dispone que los recursos de *Apelación* tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial. *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998). Como corolario de lo anterior, la Regla 13(A) del Reglamento del Tribunal de Apelaciones establece que: "Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia". Regla 13(A) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.

---

[17] Las partes con interés fueron nombradas como: Manuel Bezares Peña, John Doe y Richard Roe.

Por otro lado, los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

[…]

El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[…]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

[…]

(b) *Recurso de "certiorari"* […]
Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.

[…]

32 LPRA Ap. V, R. 52.2 (b).

El *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009). Expedir el recurso "no procede cuando existe otro recurso legal que protege rápida y eficazmente los derechos de la parte peticionaria". *Id.* Conviene desatacar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).

A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". *Id.* La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, esboza los criterios que el Tribunal deberá considerar para expedir un auto de *Certiorari,* como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha establecido que un tribunal revisor no debe sustituir

su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).

Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

**B**

En nuestro ordenamiento jurídico es necesario que la notificación de las órdenes, resoluciones y sentencias emitidas por los tribunales se den de forma adecuada. *Berríos Fernández v. Vázquez Botet,* 196 DPR 245, 250 (2016).  Ello, pues así el debido proceso de ley en su vertiente procesal lo exige. *Dávila Pollock et als. v. R.F. Mortgage,* 182 DPR 86, 94 (2011).  Así pues, "[l]a incorrecta notificación de los dictámenes emitidos por los tribunales atenta contra los derechos de las partes al privarles de cuestionar el dictamen emitido y causarles demoras e impedimentos en el proceso judicial. *Berríos Fernández v. Vázquez Botet, supra,* 250-251. Por ello, al no notificarse adecuadamente alguna resolución, orden o sentencia, estas no surten efecto y los términos no comienzan a transcurrir.

En armonía con lo antes expuesto, el Tribunal Supremo de Puerto Rico ha explicado que "[l]a notificación adecuada de una parte es aquella que se dirige específicamente a la parte o a su representación legal". *R & G Mortgage v. Arroyo Torres y otros,* 180 DPR 511, 525 (2010).

En ese sentido, la Regla 65.3 de Procedimiento Civil, regula lo concerniente al proceso de notificación de órdenes, resoluciones y

sentencia a aquellas partes que han sido emplazados mediante edicto:

> En el caso de partes en rebeldía que hayan sido emplazadas, **por edictos y que nunca hayan comparecido en autos** o de partes demandadas desconocidas, el Secretario o Secretaria expedirá un aviso de notificación de sentencia por edictos para su publicación por la parte demandante. El aviso dispondrá que éste, debe publicarse una sola vez en un periódico de circulación general en la Isla de Puerto Rico dentro de los diez (10) días siguientes a su notificación e informará a la parte demandada de la sentencia dictada y del término para apelar. Copia del aviso de notificación de sentencia publicado será notificada a la parte demandada por correo certificado con acuse de recibo dentro del término de diez (10) días luego de la publicación del edicto a la última dirección conocida del demandado. **Todos los términos comenzarán a computarse a partir de la fecha de la publicación del edicto, la cual deberá acreditarse mediante una declaración jurada del (de la) administrador(a) o agente autorizado(a) del periódico, acompañada de un ejemplar del edicto publicado** (Énfasis suplido).

32 LPRA Ap. V, R. 65.3.

La citada regla establece que la Secretaría del TPI tiene la obligación de notificar una sentencia para su publicación por edicto en tres (3) circunstancias determinadas, cuando la parte se emplazó por edicto, no compareció o era un demandado desconocido. *Bco. Popular v. Andino Solís,* 192 DPR 172, 185 (2015). A esto también se ata la norma reiterada referente a que la notificación a las partes es un requisito importante para que una sentencia contenga un aspecto de finalidad y firmeza. Un dictamen judicial es final cuando se archiva en autos la notificación y se registra la sentencia, pero se convierte en firme una vez haya transcurrido el término para pedir reconsideración o apelar sin que esto se haya hecho. *Cruz Roche v. Colón y Otros,* 182 DPR 313, 323 (2011), citando a R. Hernández Colón, *Derecho Procesal Civil,* 5ta ed., Ed. Lexis Nexis, 2010, Puerto Rico, págs. 378–379. Sin embargo, **si la sentencia "no se notifica a una parte la misma carece de eficacia y los términos para**

**solicitar remedios o presentar recurso contra ella no decursan**" (Énfasis suplido).  R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 2802, pág. 212.  Así, "si no se cumple con el trámite de notificación de las sentencias, éstas no surtirán efecto alguno ni podrán ser ejecutadas".  *Vélez v. A.A.A.,* 164 DPR 772, 789 (2005).

## C

Sabido es que los tribunales solo pueden resolver casos y controversias justiciables. *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 931 (2011). El principio de la justiciabilidad gobierna el ejercicio de la función revisora de los tribunales y, consecuentemente, el alcance de su jurisdicción. Conforme al mismo, los tribunales limitan su intervención a resolver controversias reales y definidas que afectan las relaciones jurídicas de partes antagónicas. *Super Asphalt v. AFI y otro*, 206 DPR 803, 815 (2021); *U.P.R. v. Laborde Torres y otros I*, 180 DPR 253, 279-280 (2010); *E.L.A. v. Aguayo*, 80 DPR 552, 583-584 (1958).

Como elemento esencial para la adjudicación de los méritos de una controversia, el principio de justiciabilidad impone a los tribunales el deber de examinar si la parte que acude a su auxilio ostenta legitimación activa para actuar de conformidad. *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 738-739 (2022); *Hernández Torres v. Gobernador*, 129 DPR 824, 835 (1992). Esta figura se define como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante". *Íd.*, citando a *Ramos, Méndez v. García García*, 203 DPR 379, 394 (2019); *Bhatia Gautier v. Gobernador*, supra, pág. 69.  El propósito de la legitimación activa es que el tribunal se asegura de que la parte reclamante tiene un

interés genuino, va a perseguir su causa vigorosamente y que todos los asuntos pertinentes serán presentados ante la consideración del juzgador. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 178-179 (2022). Así, la parte que solicita un remedio judicial debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución. *Hernández, Santa v. Srio. de Hacienda*, supra, pág. 739; *Bhatia Gautier v. Gobernador*, supra.

**D**

La expropiación forzosa constituye el poder soberano que reside en el Estado para adquirir el dominio de una propiedad sita dentro de sus límites territoriales. *Administración de Terrenos de Puerto Rico v. Corporación Pesquera Henares, Inc.*, 201 DPR 14, 21 (2018). De este modo, el Estado está legitimado para hacerse de un bien privado y destinarlo a fines públicos, ello como resultado de su poder inherente para establecer restricciones sobre la propiedad. *Mun. de Guaynabo v. Adquisición M2*, 180 DPR 206, 216 (2010); *Autoridad de Tierras de P.R. v. Moreno Ruiz Developer Corp. et al.*, 174 DPR 409, 425 (2008); *E.L.A. v. Registrador*, 111 DPR 117, 119 (1981). De ahí que la facultad de expropiación forzosa ha sido reconocida como una de superior jerarquía, posicionándose sobre los derechos propietarios de los ciudadanos. *Puerto Rico v. Corporación Pesquera Henares, Inc.*, supra; *ACT v. Iñesta*, 165 DPR 121, 130 (2005); *ELA v. Registrador*, 111 DPR 117 (1981); *ELA v. Rosso*, 95 DPR 501, 536 (1967). En atención a ello, el legislador insertó en nuestro estado de derecho la Ley General de Expropiación Forzosa, Ley de 12 de marzo de 1903, según enmendada, 32 LPRA sec. 2901 *et seq.*, precepto que define los procesos inherentes al ejercicio de la facultad en cuestión. De igual forma, en dicha gestión, son de aplicación los

postulados de la Regla 58 de Procedimiento Civil, 32 LPRA Ap. V, R. 58.

Ahora bien, el mecanismo de expropiación forzosa tiene límites constitucionales que protegen contra actuaciones abusivas o arbitrarias del Estado. *Puerto Rico v. Corporación Pesquera Henares, Inc.,* supra. *Mun. de Guaynabo v. Adquisición M2,* supra, pág. 229. Con relación a ello, la Constitución del Estado Libre Asociado de Puerto Rico dispone que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, sec. 9, Const. ELA, 1 LPRA, Tomo 1*; López y otros v. A.E.E.*, 151 DPR 701, 706 (2000). Como resultado, las únicas limitaciones que pueden reconocerse a esta facultad estatal, son que la propiedad se dedique a un uso o fin público y se le satisfaga al demandado una justa compensación por ella*. Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 425 (2008); *M. Mercado e Hijos v. Tribl. Superior,* 85 DPR 370, 375-376 (1962).

En lo atinente a la controversia de autos, respecto a la acumulación de partes en una petición sobre expropiación forzosa, la Ley General de Expropiación Forzosa, *supra*, expresamente "preceptúa que la demanda se insta en contra de los dueños de la propiedad, sus ocupantes y **todas las demás personas con derecho o interés sobre la propiedad**". *ACT v. Iñesta,* supra, pág. 903. Específicamente, en su Sección 5, provee como sigue:

> Todas las personas que ocuparen cualquiera de las propiedades descritas en la demanda, que **tuvieren o pretendieren tener cualquier interés en la misma** o en los daños y perjuicios ocasionados por la expropiación, aunque no se les mencionare en ella, podrán comparecer y alegar su derecho, cada una por lo que respecta al dominio o interés que en la propiedad tuviere o reclamare, de igual modo que si su nombre figurase en la demanda.
>
> 32 LPRA sec. 2906. (Énfasis nuestro.)

De manera análoga, la Regla 58.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 58.3(b), por igual reconoce que, la parte demandante en una petición de expropiación forzosa, al momento de presentar el pleito correspondiente, "solamente tendrá que acumular como partes demandadas aquellas personas que tengan o reclamen un derecho en la propiedad cuyos nombres a la sazón se conozcan [...]".  No obstante, previo a la celebración de cualquier vista para determinar la compensación a pagarse por la misma, la parte demandante:

> [...] tendrá que acumular como partes demandadas a **todas las personas que tengan o reclamen un derecho** [en la propiedad a expropiarse], incluyendo los(las) dueños(as), ocupantes, arrendatarios(as), usufructuarios(as), y **acreedores(as) hipotecarios(as)**, cuyos nombres puedan ser conocidos mediante diligencia razonable en el Registro de la Propiedad o cuyo interés pueda identificarse mediante visitas a la propiedad o de algún otro modo [...].
>
> 32 LPRA Ap. V, R. 58.3.  (Énfasis nuestro.)

Con relación a lo anterior, la doctrina interpretativa de la materia que atendemos reconoce que, dado a que la expropiación forzosa es una de carácter *in rem,* no cabe hablar de partes indispensables en la acción.  No obstante, afirma que "el Estado tiene la obligación de acumular en el pleito toda aquella parte con interés que pueda ser identificada [...]", ello antes de celebrarse la vista sobre el justo valor, de modo que conjuntamente se diluciden los intereses de cada cual sobre el fondo correspondiente. *ACT v. Iñesta,* supra, pág. 907.

**E**

El Artículo 7.002 del Código Municipal de Puerto Rico, Ley 107-2020, 21 LPRA sec. 7951, establece que el Centro de Recaudaciones sobre Ingresos Municipales (CRIM), constituye la entidad que ofrece servicio fiscal a los municipios, ello mediante la recaudación, recibimiento y distribución de los fondos públicos que corresponden a estos, provenientes, los mismos, de las fuentes

determinadas en el estatuto. A tales fines, el Artículo 7.003 de la antedicha ley, define las facultades y deberes generales del CRIM. En lo aquí pertinente, destacan las siguientes:

[…]

(b) Recaudar la contribución sobre la propiedad establecida en este Código, correspondiente a cada municipio, según los tipos contributivos que cada uno de éstos disponga mediante ordenanza municipal al efecto, incluyendo la contribución especial para la amortización y redención de obligaciones generales del Gobierno de Puerto Rico.

(c) Establecer un fideicomiso con la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (AAFAF) o cualquier otro Fiduciario Designado para recibir todos los ingresos recaudados por concepto de contribución sobre la propiedad, según lo dispuesto en el inciso (b), y los provenientes del Sistema de Lotería Adicional y del por ciento de las rentas internas netas que corresponden a los municipios, y de cualesquiera otros ingresos que se disponga por ley para estos.

(d) Realizar todas las gestiones necesarias para cobrar las cuentas de las contribuciones sobre la propiedad.

[…]

(g) Desarrollar conjuntamente con los municipios, procesos administrativos para agilizar el cobro de la contribución sobre la propiedad, mediante la promulgación de reglamentación al efecto. De igual manera, se faculta a los municipios para que, previa notificación al CRIM, lleven a cabo gestiones de cobro de cualquier contribución y cualquier acción de embargo y ejecución sobre la propiedad mueble y/o inmueble, contra cualquier contribuyente que adeude contribuciones sobre la propiedad, por la vía administrativa o judicial, previo cumplimiento de los procedimientos de ley aplicables. Los fondos recaudados por los municipios a raíz de esta disposición serán depositados en el CRIM. […]

[…]

29 LPRA sec. 7952.

En lo concerniente, el Código Municipal, *supra,* expresamente dispone que toda contribución impuesta sobre la propiedad constituirá un gravamen de carácter preferente a favor del CRIM, ello a modo de una hipoteca legal tácita. En específico, en su Artículo 7.057, provee como sigue:

La contribución que se impusiere por el corriente año económico y por los cinco (5) años económicos anteriores sobre cada finca o parcela de propiedad inmueble, e incluso sobre cualesquiera mejoras que en ella existan o que posteriormente se hicieren en la misma, constituirá el primer gravamen sobre dicha propiedad, el cual tendrá prelación sobre cualesquiera otros gravámenes sobre dicha finca o parcela de cualquier naturaleza que fuesen, ya pesen estos sobre ella, antes o después que el gravamen determinado por dicha contribución. **No será necesario inscribir dicho gravamen para que constituya una carga real, y el mismo constituirá una hipoteca legal a favor del CRIM**.

Dicho gravamen sobre cada finca, parcela de terreno o bienes raíces solo responderá de las contribuciones que pesen sobre ellas y sobre las mejoras realizadas en las mismas. [...]

21 LPRA sec. 8014. (Énfasis nuestro.)

### III

En el presente recurso, el peticionario nos solicita la revocación de una *Resolución* emitida y notificada el 17 de mayo de 2022, y de una *Sentencia* dictada y notificada el 28 de octubre de 2022. Como cuestión de umbral, este tribunal intermedio tiene la obligación de auscultar nuestra jurisdicción para atender el recurso de *Apelación y/o Certiorari* presentado por el CRIM, lo cual procederemos hacer a continuación.

Como reseñáramos, el presente recurso recurre de dos dictámenes. Uno de estos, es la *Sentencia* que el TPI dictó y notificó el 28 de octubre de 2022. Surge de la notificación del dictamen que se notificó la misma a las siguientes personas: Fernando Van Derdys quien figuraba como la representación legal del CRIM, así como a Luis G. Padilla Bruno y María Mercado Padilla, personas identificadas como la representación legal del Municipio[18]. Sin embargo, conforme surge del expediente, en una moción intitulada *Moción Acompañando Documento*[19], y de la propia *Sentencia* apelada

---

[18] Apéndice del peticionario, a la pág. 145.
[19] Véase, SUMAC, a la entrada 30.

se constató que se emplazó por edicto a las partes con interés en este caso, a saber, Manuel Bezares Peña, John Doe y Richard Roe.

Como parte de nuestro ejercicio para auscultar nuestra jurisdicción examinamos los autos del TPI en el SUMAC. Los autos revelan que, al momento de la presentación del recurso ante esta Curia, no consta que el TPI hubiese ordenado la notificación por edicto de la presente *Sentencia* a las partes que fueron emplazadas por este método y que no comparecieron en autos. Es decir, no se le notificó la Sentencia apelada a Manuel Bezares Peña y tampoco se le notificó a John Doe ni a Richard Roe, pese a que el TPI eliminara a estos últimos dos, por entender que carecían de interés en la presente controversia.

La precitada Regla 65.3 (c) es clara en cuanto a que toda sentencia debe notificarse por edicto a aquellas partes que fueron emplazadas mediante ese mismo medio y no comparecieron al pleito[20]. El no cumplir con esta norma no solo repercute en la eficacia del dictamen y el impedimento de que las partes puedan recurrir de esta, sino que también constituye una violación al debido proceso de ley. Por consiguiente, es forzoso concluir que nos encontramos impedidos de entrar en los méritos de la *Sentencia* recurrida, ya que carecemos de jurisdicción para ello por esta haber sido presentada de forma prematura.

Por su parte, respecto a la *Resolución* del 17 de mayo de 2022, por la cual el Tribunal de Primera Instancia determinó que el CRIM no tenía legitimación activa para ser parte en la causa de autos, intimamos que, contrario a lo resuelto, la intervención solicitada por el CRIM debió haberse permitido. Tal cual esbozáramos, tanto la Ley General de Expropiación Forzosa, *supra*, como la doctrina interpretativa pertinente a la referida facultad estatal, reconocen el carácter imperativo de incluir en la petición correspondiente a toda

---

[20] 32 LPRA Ap. V, R. 65.3.

aquella parte o persona que ostente algún interés o derecho sobre la propiedad objeto del referido mecanismo, luego de que, mediante una diligencia razonable, se advenga al conocimiento de su identidad. Por su parte, y en lo concerniente al CRIM, el Código Municipal, *supra,* expresamente detalla las facultades específicas que le fueran arrogadas, de modo que se cumpla la política pública en la que se apoya su creación. A tal fin, se destaca que la responsabilidad principal del CRIM es la fiscalización de las arcas municipales, todo mediante el recaudo y la distribución de fondos públicos, incluyendo los provenientes de cuentas adeudadas. Para ello, el propio estatuto particulariza el alcance y las funciones atinentes, estableciendo, así, un esquema de facultades en virtud de las cuales el CRIM viene llamado a cumplir con el deber ministerial que se le delegó.

Del expediente de autos surge que, en efecto, el CRIM tiene un interés real en la propiedad objeto de expropiación forzosa en controversia, que, sustentado por las facultades que le asisten, hacen permisible su intervención en la acción de epígrafe. Conforme se desprende de la prueba documental que examinamos, el CRIM es acreedor del inmueble en disputa, toda vez que tiene a su favor una hipoteca legal tácita por razón de contribuciones sobre la propiedad adeudadas, todo a tenor con lo dispuesto en el Artículo 7.057 del Código Municipal, *supra.* Dicha condición, por virtud de ley, exige que se provea para que su interés sea debidamente considerado. Por tanto, el Tribunal de Primera Instancia estaba llamado a acatar la letra de los estatutos pertinentes y, en consecuencia, a garantizar al CRIM su participación plena en el pleito de epígrafe, toda vez que, en efecto ostenta suficiente legitimación activa en la controversia que se atiende. Siendo así, por concurrir las condiciones estatuidas en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA

Ap. XX-II B, R. 40, expedimos el auto de *certiorari* y revocamos la *Resolución* recurrida del 17 de mayo de 2022.

**IV**

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se revoca la *Resolución* recurrida del 17 de mayo de 2022. En cuanto a la *Sentencia* apelada, se desestima el recurso de apelación por prematuro.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Martínez Cordero hace constar su voto de conformidad con relación a la *Sentencia* apelada. Sin embargo, respetuosamente disiente en relación al curso de acción de la Mayoría de este Panel con relación a la expedición del auto de *certiorari* por entender que, en cuanto a la revisión de la *Resolución*, debió ser denegado.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones