Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| | | |
|---|---|---|
| **Banco Popular de P.R.**<br><br>Demandante -Apelado<br><br>vs.<br><br>Viviana Santiago Martínez;<br>**Yolanda I. Marrero Maldonado**<br><br>Demandadas-Apelante | TA2026AP00052 | **APELACIÓN**<br>procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil Núm.:<br>CG2024CV03834<br><br>Sobre:<br>Ejecución de Hipoteca (*In Rem*) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de febrero de 2026.

Comparece ante nos, la señora Yolanda I. Marrero Maldonado (la Sra. Marrero Maldonado o apelante), quien nos solicita la revisión de la Sentencia Enmendada emitida el 5 de diciembre de 2025,[1] por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro primario). Mediante dicho dictamen el foro primario enmendó la Sentencia en la que declaró Ha Lugar la Demanda sobre ejecución de hipoteca, dictada el 25 de febrero de 2025, con el fin de corregir la descripción de la finca conforme a la Certificación Registral presentada por el Banco Popular de Puerto Rico (BPPR o apelado).

Examinada la solicitud de autos, la totalidad del expediente y el derecho aplicable se desestima por falta de jurisdicción.

**-I-**

El 17 de octubre de 2024, el Banco Popular de Puerto Rico presentó una Demanda sobre ejecución de hipoteca por la vía

---

[1] Notificada para su publicación por edicto el 11 de diciembre de 2025 y publicada en el periódico Primera Hora el 15 de diciembre de 2025.

ordinaria contra la señora Viviana Santiago Martínez y la Sra. Marrero Maldonado. Indicó que, incluyó a la Sra. Marrero Maldonado por ser parte con interés, al ser titular y/o poseedora del inmueble objeto de ejecución. Sostuvo que el 25 de marzo de 2004, la Sra. Santiago Martínez suscribió cierto pagaré hipotecario a favor de New York Mortgage Bankers, o a su orden, mediante el cual se le concedió un préstamo por la suma principal de $260,000.00, con un interés anual de 5.50% y fecha de vencimiento al 1 de abril de 2034. Señaló que, en garantía del referido pagaré y en esa misma fecha, la Sra. Santiago Martínez otorgó la Escritura Núm. 117 ante el notario Carlos Martínez Olmo, mediante la cual constituyó una hipoteca sobre el inmueble objeto de la presente controversia, cuya descripción es la siguiente:

*URBANA: Solar número 64 de la Urbanización Estancias de Siervas de Maria, radicada en el Barrio Navarro del término municipal de Gurabo, Puerto Rico, con una cabida superficial de SETECIENTOS SEIS PUNTO OCHENTA Y SIETE (706.87) metros cuadrados; en lindes por el NORTE, en una distancia de 9.759 metros en un radio de 13.982° grados, con el solar número 58 y 1.269 metros en un radio de 13.982° grados con el solar número 57; por el SUR, en una distancia de 21.972 metros en un radio de 13.982° grados y en ángulo de 90° grados hacia el OESTE, 6.5 metros lineales todo con la calle A de la urbanización, y en una distancia de 11.259 metros lineales con el solar número 11; por el ESTE, en una distancia de 30 metros con el solar número 63; y por el OESTE, en una distancia de 36.53 metros lineales con el solar número 65 de la urbanización. Contiene una casa para fines residenciales.---------------------------------------------------*

Manifestó que, el BPPR es el actual tenedor del aludido pagaré. Indicó, entre otros asuntos, que la Sra. Santiago Martínez adeuda solidariamente la suma de $136,441.82, balance de principal del referido pagaré, los intereses convenidos devengados sobre dicha suma desde el 1 de junio de 2022 hasta su total y completo pago. Por tal motivo, solicitó que se ordene la venta en pública subasta de la propiedad en cuestión y que con el producto de dicha venta se pague lo adeudado.

El 26 de octubre de 2024, se expidieron los emplazamientos correspondientes.  El 12 de noviembre de 2024, se diligenció el emplazamiento personal de la Sra. Marrero Maldonado.[2]  El 20 de noviembre de 2024, el BPPR presentó una Moción de Emplazamiento por Edicto en la que informó al TPI de los intentos infructuosos para emplazar a la Sra. Santiago Martínez.

El 9 de diciembre de 2024, notificada el 13 del mismo mes y año, el Tribunal de Primera Instancia emitió una Orden mediante la cual requirió ciertos documentos, incluyendo evidencia de cumplimiento con la Ley Núm. 169-2016, según enmendada, conocida como la "Ley de Ayuda al Deudor Hipotecario", 32 LPRA sec. 2891 *et seq.*

El 13 de diciembre de 2024, dicho foro expidió el emplazamiento por edicto de la Sra. Santiago Martínez.  Ese mismo día, el foro primario emitió una Orden mediante la cual refirió el caso a un Centro de Mediación de Conflictos de la Rama Judicial (CMC), según lo requiere la Ley Núm. 184-2012, según enmendada, conocida como la "Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal", 32 LPRA sec. 2881 *et seq.*[3]

El 22 de enero de 2025 el Centro de Mediación de Conflictos presentó una Moción de Resultado.[4]  En ésta, hizo constar que el 17 de enero de 2025 se llevó a cabo la cita de mediación remota a la que únicamente se presentó la parte demandante.  Indicó que se le envió cita a la parte demandada a las direcciones postales que constan en el expediente, las cuales no fueron devueltas.  A su vez, informó que se dio por concluida su intervención para dar paso al trámite judicial correspondiente.

---

[2] *Véase,* Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC TPI), Entrada Núm. 4.
[3] *Véase,* SUMAC TPI, Entrada Núm. 7; Entrada Núm. 13.
[4] *Véase,* SUMAC TPI, Entrada Núm. 14.

Ante tales circunstancias, el 24 de enero de 2025 el BPPR presentó una Solicitud de Anotación de Rebeldía y Sentencia. Sostuvo que, a esa fecha, la parte demandada no había presentado alegación responsiva a la demanda a pesar de haber transcurrido en exceso el término legal para ello. El 30 de enero de 2025, notificada al día siguiente, el foro primario dispuso mediante Orden que se acreditara el cumplimiento con la Ley Núm. 169-2016 y se aclarara si la propiedad forma parte de un caudal cubierto por una quiebra conforme a la Ley Federal de Quiebras.[5]

Así las cosas, el 4 de febrero de 2025 el BPPR presentó una Moción en Cumplimiento de Orden. Sostuvo que la parte demandada no ha entregado el formulario requerido por la Ley Núm. 169-2016 ni los documentos mínimos requeridos solicitando acogerse a los beneficios del Departamento de Mitigación de Pérdidas. En cuanto al asunto de quiebra, explicó que el 26 de abril de 2021 el Tribunal de Quiebras dejó sin efecto la paralización automática habida contra la Sra. Santiago Martínez. Señaló que la acción de epígrafe se presentó en su modalidad de ejecución de hipoteca *In Rem*.

El 5 de febrero de 2025, notificada al día siguiente, el TPI dio por cumplida la Orden respecto a la aclaración sobre el proceso de quiebra. En igual fecha, el foro primario emitió una Resolución mediante la cual declaró No Ha Lugar en cuanto a no proveer evidencia del cumplimiento con la Ley Núm. 169-2016, *Real Estate Settlement Procedures Act of 1974*, 12 U.S.C. 2601 *et seq.* (RESPA) y el Reglamento X.[6] Destacó que es deber del tribunal asegurarse que la parte demandada fue notificada de las alternativas disponibles para la mitigación de pérdidas antes del inicio de cualquier acción de ejecución de hipoteca. En consecuencia, el

---

[5] *Véase*, SUMAC TPI, Entrada Núm. 22.
[6] *Véase*, SUMAC TPI, Entrada Núm. 21.

foro primario le concedió al BPPR un término de 15 días finales e improrrogables para proveer dicha evidencia.

En respuesta, el 14 de febrero de 2025 el BPPR presentó una Moción en Cumplimiento de Resolución mediante la cual acompañó una misiva enviada a la Sra. Santiago Martínez con fecha de 5 de noviembre de 2020.[7] Alegó que en virtud de dicha misiva surge la notificación de los atrasos y las alternativas de pago habidas en el Departamento de Mitigación de Pérdidas para evitar la ejecución de la propiedad. Señaló que posterior a ello la deudora se acogió a la Ley de Quiebras y que la paralización automática y la protección que provee dicho remedio federal le impidió al BPPR realizar cualquier acercamiento adicional en cobro de la deuda acumulada. Por último, reiteró que la deudora no ha entregado el formulario junto a los documentos pertinentes solicitando acogerse a los beneficios del Departamento de Pérdidas del banco.

Posteriormente, el 24 de febrero de 2025, notificada al día siguiente, el TPI declaró Con Lugar la Demanda y ordenó la venta en pública subasta de la propiedad.[8] Así, el 8 de abril de 2025 el BPPR presentó una Solicitud de Ejecución de Sentencia.[9] Manifestó que la Sentencia dictada el 24 de febrero de 2025 fue notificada a la parte demandada mediante la publicación del correspondiente edicto durante el día 4 de marzo de 2025. Ese mismo día, el TPI emitió una Orden de Ejecución de Sentencia y Venta de Bienes.

Luego de varios trámites procesales, el 22 de mayo de 2025 la Sra. Marrero Maldonado presentó una Urgentísima Moción en Auxilio de Jurisdicción y Solicitud para que se Posponga Subasta

---

[7] *Véase*, SUMAC TPI, Entrada Núm. 20.
[8] *Véase*, SUMAC TPI, Entrada Núm. 23.
[9] *Véase*, SUMAC TPI, Entrada Núm. 28.

Pautada para el 27 de mayo de 2025.[10]  Indicó que, el 5 de enero de 2018 adquirió mediante compra el inmueble objeto del presente litigio, el cual constituye su residencia principal.  Explicó que, según lo pactado en la escritura de compraventa, ésta comenzó a pagar el préstamo hipotecario número 0500157896 el cual continuó a nombre de la codemandada, la Sra. Santiago Martínez. Señaló que las partes acordaron que, al transcurrir tres (3) años se podría efectuar el cambio correspondiente de nombre en la institución bancaria.

Alegó que, en el año 2020 acudió al BPPR para intentar hacer el cambio de dueño del préstamo hipotecario, ocasión en la que se dejó constancia de que era la persona que efectuaba los pagos.  Arguyó que en el año 2022 acudió en varias ocasiones al BPPR para resolver dicha situación, toda vez que había perdido contacto con la Sra. Santiago Martínez y el banco no le aceptaba los pagos.  Manifestó que se le informó que la Sra. Santiago Martínez debía comunicarse con el banco y autorizarla a gestionar el cambio solicitado.

Sostuvo que para la fecha en que fue emplazada con copia de la demanda, se encontraba en duelo por la pérdida reciente de su padre y el estado de salud de su madre.  Indicó que, el 12 de mayo de 2025, luego de que un potencial comprador llamara para solicitar acceso a la propiedad, advino en conocimiento de que en el presente caso se había dictado sentencia y que la subasta estaba pautada para el 27 de mayo de 2025.  Explicó que su intención es subrogarse en la posición de la Sra. Santiago Martínez y asumir la obligación hipotecaria.  Por tal razón, solicitó la posposición del proceso de subasta para que se atienda la controversia extrajudicialmente.  Por último, solicitó que se ordene al BPPR a facilitar una certificación sobre el balance de cancelación, el

---

[10] *Véase*, SUMAC TPI, Entrada Núm. 31.

balance para reestablecer el préstamo hipotecario, además de autorizarlo para realizar gestiones con el préstamo hipotecario con el fin de que ésta pueda preservar su propiedad.

El 23 de mayo de 2025, la Sra. Marrero Maldonado presentó una Moción [de] Relevo de Sentencia y Paralización de Subasta.[11] En síntesis, alegó que el BPPR no le brindó participación en los mecanismos previstos en la Ley Núm. 169-2016 y RESPA, pese a que es su derecho como titular de la propiedad el que realimente se ve afectado. Adujo que, el BPPR se negó a asistirle por no ser la deudora hipotecaria, privándola así de una oportunidad razonable de acceder a alternativas para cubrir los pagos adeudados. Por ello, solicitó el relevo de sentencia y que se ordene al BPPPR a proveerle toda la información relacionada al préstamo hipotecario, tal y como si fuera la deudora.

Así las cosas, el 23 de mayo de 2025 el foro primario emitió una Resolución mediante la cual dejó sin efecto la subasta de 27 de mayo de 2025 y le concedió al BPPR un término para expresar su opinión.[12]

El 2 de junio de 2025, el BPPR presentó una Moción en cumplimiento de Orden. En esencia, planteó que la Sra. Marrero Maldonado invoca remedios y derechos que sólo recaen sobre la figura del deudor hipotecario, a saber, la Sra. Santiago Martínez.[13] Añadió que, el acuerdo de compraventa suscrito entre la Sra. Santiago Martínez y la Sra. Marrero Maldonado no obliga a la parte demandante y acreedor hipotecario, BPPR, a reconocer a la Sra. Marrero Maldonado como deudora y/o clienta de dicha entidad bancaria. Sostuvo que, las partes codemandadas suscribieron el referido acuerdo de compraventa, sin el consentimiento y/o participación del acreedor hipotecario y con pleno conocimiento de

---

[11] *Véase*, SUMAC TPI, Entrada Núm. 33.
[12] *Véase*, SUMAC TPI, Entrada Núm. 34.
[13] *Véase*, SUMAC TPI, Entrada Núm. 35.

que existía una carga hipotecaria sobre la propiedad.  En resumen, arguyó que, se encuentra impedido conforme a la normativa federal y estatal, de divulgar información relacionada al préstamo hipotecario objeto de ejecución que corresponde exclusivamente a la deudora hipotecaria, la Sra. Santiago Martínez.

Examinadas las posturas de las partes, el 4 de junio de 2025,[14] el foro primario emitió una Resolución mediante la cual declaró No Ha Lugar la solicitud de relevo de sentencia. En particular, dicho foro concluyó que "la demandada estuvo informada de todos los procesos y no fue hasta que el caso se encontraba en la etapa de ejecución de sentencia que compareció al Tribunal a solicitar un remedio".[15]  Así pues, el TPI ordenó la continuación del proceso de ejecución de sentencia.

El 6 de junio de 2025 la Sra. Marrero Maldonado presentó una Solicitud de Orden requiriendo que se ordene al BPPR a ofrecerle el balance de reinstalación, balance de cancelación y la oportunidad de refinanciar la deuda.

El 27 de junio de 2025 el BPPR presentó una Solicitud de Nueva Orden y Mandamiento de Ejecución de Sentencia.  El 30 de junio de 2025, notificada el 21 de julio de igual año, el TPI emitió una Orden mediante la cual le concedió al BPPR un término de 10 días para aclarar la cabida superficial de la finca objeto de ejecución.  Esto, dado que en la demanda, al igual que en la certificación registral y en la Sentencia, la propiedad se describe con una cabida de 706.87, mientras que en la escritura se menciona una cabida de 606.87 y en la solicitud de ejecución de sentencia se indica una cabida de 711.617.[16]

Por su parte, 23 de julio de 2025 la Sra. Marrero Maldonado presentó una Urgentísima Moción para que se Detalle el Importe

---

[14] Notificada el 11 de junio de 2025.
[15] *Véase*, SUMAC TPI, Entrada Núm. 38.
[16] *Véase*, SUMAC TPI, Entrada Núm. 41.

de las Partidas Reclamadas en el Proceso de Ejecución y en Oposición a Enmienda a las Alegaciones que no Surjan de la Demanda sin un Debido Proceso de Ley.[17]  En esencia, alegó que dado que la deudora hipotecaria y la titular no son la misma persona, ésta tiene derecho a un debido proceso de ley previo a que se le prive de su propiedad y se le permita subrogarse en el lugar de la deudora. Añadió que, cualquier cambio en la cabida del inmueble objeto de ejecución constituye una enmienda a las alegaciones de la demanda, lo cual afecta su debido proceso de ley.

El 28 de julio de 2025, el BPPR presentó Moción en Cumplimiento de Orden.  Señaló que, de acuerdo con un estudio de título actualizado, se desprende que el 19 de mayo de 2025 el Hon. Arsenio Ramos Hernández, Registrador de la Propiedad, firmó electrónicamente la nota marginal 1.1 sobre la finca 21,880, en la que indicó que la cabida correcta del solar 64 de la Urbanización Estancias de Siervas de María es de 711.617 metros cuadrados.

El 29 de agosto de 2025, el foro primario emitió una Resolución mediante la cual declaró Ha Lugar en cuanto al asunto de la cabida.  Así, el 5 de diciembre de 2025 el TPI dictó una Sentencia Enmendada, publicada el 15 de diciembre de 2025.[18] Mediante ésta, el foro recurrido corrigió la descripción de la finca conforme a la certificación registral presentada por el BPPR.

Inconforme aún, el 15 de enero de 2026, la parte apelante recurrió ante nos mediante una Apelación Civil, en la cual planteó la comisión de los siguientes errores:

> *Primer Error: Erró el Tribunal de Primera Instancia al dictar Sentencia Enmendada para alterar la cabida registral del inmueble, careciendo de jurisdicción sobre el inmueble e intentar subsanar un defecto sustancial en la identidad del objeto en una acción in rem.*

---

[17] *Véase*, SUMAC TPI, Entrada Núm. 42.
[18] Notificada para su publicación por edicto el 11 de diciembre de 2025. *Véase,* SUMAC TPI, Entrada Núm. 50; Entrada Núm. 53

*Segundo Error: Erró el Tribunal de Primera Instancia al determinar que la apelante estuvo informada del proceso, actuando en contravención con la evidencia del expediente que demuestra que las notificaciones esenciales fueron devueltas, violando así el debido proceso de ley.*

*Tercer Error: Erró el Tribunal de Primera Instancia al eximir al acreedor del cumplimiento con la Ley de Mediación Obligatoria (Ley 184-2012) respecto a la titular registral, bajo la premisa errónea de la ausencia de relación contractual directa.*

*Cuarto Error: Erró el Tribunal de Primera Instancia al denegar el desglose detallado de la deuda reclamada, impidiendo de forma discriminatoria que la titular registral ejerza su derecho propietario de subrogación y redención del gravamen.*

El 12 de febrero de 2026, el BPPR presentó su oposición mediante el escrito intitulado Alegato Civil. Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

**-II-**

**-A-**

Los tribunales tienen la responsabilidad de examinar su propia jurisdicción, así como la del foro de donde procede el recurso ante su consideración. *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 500 (2019). La jurisdicción se refiere al poder o autoridad que posee un tribunal para considerar y decidir casos o controversias. *R&B Power, Inc. v. Junta de Subastas ASG*, 213 DPR 685, 698 (2024) (citando a *Cobra Acquisitions v. Mun. De Yabucoa et al.*, 210 DPR 384, 394 (2022)).

Nuestro Tribunal Supremo ha sido enfático que los tribunales debemos ser celosos guardianes de su jurisdicción, por lo que no tenemos discreción para asumir jurisdicción donde no la hay. *Pueblo v. Ríos Nieves*, 209 DPR 264, 273 (2022). En ese sentido, los foros judiciales tenemos el deber ineludible de atender con preferencia los asuntos concernientes a la jurisdicción. *R&B Power, Inc. v. Junta de Subastas ASG, supra*, a la pág. 698. Esto,

pues, "[u]na vez un tribunal determina que no tiene jurisdicción para entender en el asunto presentado ante su consideración, procede la desestimación inmediata del recurso". *Pueblo v. Torres Medina*, 211 DPR 950, 958 (2023).

Es norma reiterada que, para adjudicar un caso, los foros judiciales de Puerto Rico deben tener jurisdicción sobre la materia, así como sobre las partes litigiosas. *FCPR v. ELA et al.*, 211 DPR 521, 530 (2023). La jurisdicción sobre la materia "se refiere a la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal". J.A. Echevarría Vargas, Procedimiento Civil Puertorriqueño, 1ra ed., Colombia, 2010, pág. 25. Es el Estado el único que puede, a través de sus leyes, privar a un tribunal de jurisdicción sobre la materia, ya sea por disposición expresa o por implicación necesaria. *MCS Advantage v. Fossas Blanco et al.*, 211 DPR 135, 145 (2023). La falta de jurisdicción sobre la materia da lugar a las consecuencias siguientes:

> *(1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. Beltrán Cintrón et al v. ELA et al,* 204 DPR 89, 101-102 (2020).

Por otro lado, la Regla 83 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR ___ (2025), nos otorga la facultad para desestimar un recurso cuando, entre otras circunstancias, este Tribunal de Apelaciones carece de jurisdicción para atender el mismo.

La presentación prematura o tardía de un recurso priva de jurisdicción al tribunal al cual se recurre. *Pueblo v. Rivera Ortiz*, 209 DPR 402, 415 (2022). Lo determinante para concluir si un recurso es prematuro o tardío es su fecha de presentación. *Íd.* Un

recurso es prematuro cuando se ha presentado con relación a una determinación que se encuentra pendiente y no ha sido resuelta. *Yumac Home v. Empresas Massó*, 194 DPR 96, 107 (2015). Es decir, es aquel que se presenta en la secretaría de un tribunal apelativo antes de que este adquiera jurisdicción. *Pueblo v. Ríos Nieves*, *supra*, a la pág. 274. En cambio, un recurso tardío es el que se presenta luego de transcurrido el término dispuesto en ley para recurrir. *Yumac Home v. Empresas Massó, supra,* a la pág. 107.

Ahora bien, las consecuencias de uno y otro son distintas. La desestimación de un recurso tardío es final, y priva fatalmente a la parte de presentarlo nuevamente. *Pueblo v. Rivera Ortiz, supra,* a la pág. 415. En cambio, un recurso desestimado por prematuro permite a la parte afectada presentarlo nuevamente en el momento oportuno. *Íd.* Esto es, luego de que cuando el foro recurrido resuelva lo que tenía ante su consideración. *Yumac Home v. Empresas Massó, supra,* a la pág. 107.

En resumen, los asuntos jurisdiccionales son privilegiados y deben cumplirse estrictamente porque, de lo contrario, el tribunal revisor no tendrá jurisdicción sobre el asunto y desestimará la reclamación sin entrar en los méritos de la controversia. *R&B Power, Inc. v. Junta de Subastas ASG, supra,* a la pág. 698.

**-B-**

La Regla 49.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.1, permite a los tribunales corregir los errores de forma en las sentencias, órdenes u otras partes del expediente y los que aparezcan en estas por inadvertencia u omisión. *Otero Vélez v. Schroder Muñoz,* 200 DPR 76, 92 (2018). Estas correcciones pueden realizarse en cualquier tiempo, por iniciativa del tribunal o por la solicitud de cualquier parte, previa notificación, si esta se ordena. Regla 49.1 de Procedimiento Civil, *supra.* El Foro Primario

puede corregir los errores de forma antes de elevar el expediente al Tribunal de Apelaciones, y posteriormente sólo podrán corregirse con el permiso de dicho foro. *Íd.* Las enmiendas dirigidas a solucionar los errores de forma son de naturaleza *nunc pro tunc*, lo que significa que se retrotraen a la fecha de la sentencia o resolución original. *Vélez v. AAA,* 164 DPR 772, 791 (2005).

Nuestro Tribunal Supremo ha manifestado que, los errores de forma son aquellos que resultan de inadvertencias u omisiones. *Plan Salud Unión v. Seabord Sur. Co.,* 182 DPR 714, 721 (2011). Son errores mecanográficos que no afectan la sustancia de la sentencia, orden o resolución, ni están vinculados a cuestiones de discreción. *Íd.* Entre los errores de forma más frecuentes se encuentran los errores de: (1) cálculos matemáticos, (2) nombres de personas o lugares, (3) fechas (4) números o cifras. *S.L.G. Coriano Correa v. K-mart Corp.,* 154 DPR 523, 530 (2001). También pueden corregirse en esa misma forma las "descripciones de propiedad equivocadas". R. Hernández Colón, <u>Práctica jurídica de Puerto Rico: Derecho Procesal Civil,</u> 6ta ed., San Juan, Ed. Lexisnexis, 2017, Sec. 4902, págs. 669-670.

Es menester destacar que, las modificaciones a las sentencias deben respaldarse por el expediente del tribunal y las correcciones no pueden afectar los derechos ya obtenidos por las partes involucradas en la disputa. *Otero Vélez v. Schroder Muñoz, supra,* a la pág. 91. Esto es, las enmienda *nunc pro tunc* no proceden cuando existen errores de derechos, pues no se trata de la corrección de una mera inadvertencia, sino que se podrían afectar los derechos fundamentales de los litigantes. *S.L.G. Coriano-Correa v. K-mart Corp., supra,* a la pág. 530.

Por lo tanto, el principio fundamental para establecer la fecha de retroacción de la enmienda es que el cambio no altere un derecho sustantivo, sino que rectifique una mera inadvertencia.

*Otero Vélez v. Schroder Muñoz, supra* a la pág. 91. Así pues, los errores de forma no tienen el efecto de interrumpir el término dispuesto para instar remedios posteriores a la sentencia. *Vélez v. A.A.A., supra,* a la pág. 790.

**-III-**

En el recurso presente, la Sra. Marrero Maldonado nos solicita que, revoquemos la Sentencia Enmendada del TPI mediante la cual se corrigió la cabida superficial del bien inmueble objeto de ejecución. En esencia, la parte apelante sostuvo que el TPI incurrió en error al: (1) corregir un defecto sustancial en la identidad del inmueble; (2) determinar que ésta estuvo informada del proceso judicial, aún cuando ciertas notificaciones esenciales fueron devueltas; (3) eximir al acreedor del cumplimiento con la Ley Núm. 184-2012, *supra*; y (4) denegar el desglose detallado de la deuda reclamada. Veamos.

Como relacionamos previamente, el Tribunal de Primera Instancia emitió una Sentencia en rebeldía el 24 de febrero de 2025, notificada mediante edicto el 4 de marzo de 2025.[19] Es menester resaltar que, la Sra. Marrero Maldonado fue emplazada personalmente el 12 de noviembre de 2024. Sin embargo, el 22 de mayo de 2025 ésta compareció por primera vez al pleito mediante la presentación de una Urgentísima Moción en Auxilio de Jurisdicción y Solicitud para que se Posponga Subasta Pautada para el 27 de mayo de 2025. Luego, el 23 de mayo de 2025 la Sra. Marrero Maldonado presentó una Moción [de] Relevo de Sentencia y Paralización de Subasta.

Evaluados sus planteamientos, el 11 de junio de 2025, notificada el mismo día, el foro *a quo* emitió una Resolución mediante la cual declaró No Ha Lugar la solicitud de relevo de

---

[19] Notificada para su publicación por edicto el 28 de febrero de 2025 y publicada el 4 de marzo de 2025. *Véase,* SUMAC TPI, Entrada Núm. 28.

sentencia.  El referido foro coligió que la Sra. Marrero Maldonado estuvo informada de todos los procesos y que no fue sino hasta encontrarse el caso de epígrafe en etapa de ejecución de sentencia que compareció a solicitar un remedio.  Tómese en cuenta que la Sra. Marrero Maldonado no interpuso recurso alguno contra dicha determinación.

Siendo ello así, el 23 de julio de 2025 la Sra. Marrero Maldonado presentó una Urgentísima Moción para que se Detalle el Importe de las Partidas Reclamadas en el Proceso de Ejecución y en Oposición a Enmienda a las Alegaciones que no Surjan de la Demanda sin un Debido Proceso de Ley.  No obstante, el 29 de agosto de 2025 el tribunal declaró No Ha Lugar la misma mediante Resolución.  Tras dictarse la Sentencia Enmendada el 5 de diciembre de 2025,[20] la parte apelante recurrió ante nos mediante el presente recurso el 15 de enero de 2026.

Ahora bien, es sabido que la Regla 49.1, *supra*, permite al tribunal que dictó sentencia corregir cualquier error de forma.  Así, una enmienda al amparo de ésta no interrumpe el término jurisdiccional para apelar y que, una vez corregida, sus efectos se retrotraen a la fecha en que fue dictada.  *Vélez v. A.A.A., supra,* a la pág. 790; H.A. Sánchez Martínez, Práctica Jurídica de Puerto Rico, Derecho Procesal Apelativo, Hato Rey, Ed. Lexis–Nexis de Puerto Rico, Inc., 2001, págs. 128-29.

**Si bien el foro primario intituló su dictamen Sentencia Enmendada, no nos encontramos ante una cuestión de interpretación de la ley o un cambio que altere un derecho sustantivo, sino frente a una corrección numérica en cuanto a la descripción del inmueble objeto de ejecución.  En consecuencia, la corrección realizada por el TPI es de**

---

[20] Notificada para su publicación por edicto el 11 de diciembre de 2025 y publicada el 15 de diciembre de 2025.

**naturaleza *nunc pro tunc*, de modo que se retrotrae a la fecha de la Sentencia original dictada el 24 de febrero de 2025, notificada el 4 de marzo del mismo año.** De ahí que, tal como razonó la parte apelada en su alegato, el recurso apelativo ante nos resulta tardío por lo que éste Foro carece de jurisdicción para atenderlo. Cabe recalcar que la presentación tardía de un recurso impide que atendamos en los méritos los señalamientos de error en él levantados. Por lo tanto, en observancia de nuestro deber de ser celosos guardianes de nuestra jurisdicción, lo que procede es desestimar, sin más, el recurso ante nuestra consideración.

**-IV-**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, desestimamos el recurso de apelación presentado por la señora Yolanda I. Marrero Maldonado, por falta de jurisdicción.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones